UNITED STATES of America,
Plaintiff-Appellee,

v.

Wesley Leon HARPER, Defendant-
Appellant.

No. 71–2975
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 15, 1972.

* ▮ Rule 18, 5 Cir.; See Isbell Enter-
prises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d
409, Part I.

706

Morton O. Orbach (Court Appointed), Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Kenneth G. Oertel, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Wesley Leon Harper was found guilty after jury trial of violating Title 18, U. S.C., Section 2113(d), the federal bank robbery statute. He appeals from his judgment of conviction and sentence to ten years confinement. We affirm.

At the jury trial below, defense counsel stipulated to the truth of the factual allegations in the indictment. It was agreed that the sole issue to be determined by the jury was Harper's mental condition at the time he committed the robbery. He offered no other defense.

Included with the evidence offered at trial as to the appellant's mental condition, the government produced a psychiatrist, Dr. Moreau, who testified that, in his opinion, Harper was sane at the time of the robbery. Dr. Moreau had participated in a brief (one-half hour) examination of Harper while Harper was at the Medical Center at Springfield, Missouri.[1] Dr. Moreau also had access to appellant's medical records and to the report prepared by a psychologist, Dr. Murney, who had examined and tested Harper extensively at Springfield. Dr. Murney was present at the trial and available to testify. The government represented that Dr. Murney would be called to testify after Dr. Moreau. At the completion of Dr. Moreau's testimony, however, the government rested its case and refused to call Dr. Murney as a prosecution witness. Defense counsel was told by the court that he was at liberty to call Dr. Murney. He did not do so.

Appellant's first contention on appeal is that the trial court committed reversible error in allowing Dr. Moreau to testify as to Harper's sanity since his opinion was in considerable part based on material not introduced in evidence. Harper maintains that an expert opinion cannot be based on opinions, conclusions, or inferences of others, and that Dr. Moreau's testimony should have been rejected for this reason. He also contends that the government had a duty to call Dr. Murney.

As to the latter point, it seems clear that a prosecutor has no duty to call all the witnesses he has subpoenaed, and may exercise his own judgment concerning the witnesses to be called and the testimony to be presented. See, e. g., United States v. Polisi, 2 Cir. 1969, 416 F.2d 573; Eberhart v. United States, 9 Cir. 1958, 262 F.2d 421; Curtis v. Rives, 1941, 75 U.S.App.D.C. 66, 123 F.2d 936; Jordon v. Bondy, 1940, 72 App.D.C. 360, 114 F.2d 599; Williams v. United States, 1927, 57 App.D.C. 253, 20 F.2d 269. Additionally, the admissibility of Dr. Moreau's testimony below was not conditioned by the trial court upon a requirement that the prosecution call Dr. Murney to the stand at a later time. The government's failure to call Dr. Murney did not in itself create reversible error.

Appellant contends, however, that without Dr. Murney's testimony there would be no evidence upon which Dr. Moreau could base his opinion. Sitting en banc, this Court has held that an expert's testimony is not required by either the confrontation clause or the hearsay rule to be based solely upon records which are themselves introduced in evidence as long as the sources of information are of a type reasonably relied upon by experts in forming their opinions or inferences upon the subject.

1. After a preliminary psychiatric examination, the trial court on February 4, 1971, ordered Harper committed to the Medical Center at Springfield for extensive psychiatric testing and examination pursuant to Title 18 U.S.C., Sec. 4244.

United States v. Williams, 5 Cir. 1971, 447 F.2d 1285. Dr. Moreau's testimony falls within this category. In addition, we held in a closely analogous case, Birdsell v. United States, 5 Cir. 1965, 346 F.2d 775, cert. den. 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965), reh. den. 383 U.S. 923, 86 S.Ct. 900, 15 L. Ed.2d 680 (1966), that although it is preferable for the doctor who examined the defendant to testify, a psychiatrist who has reviewed all of the records and attended a staff conference with the examining doctor is qualified to give his opinion as to whether the defendant was sane at the time of the commission of the crime. Here, Dr. Moreau based his opinion upon a brief psychiatric staff examination of the appellant at which Dr. Moreau was present, medical reports which consisted of a psychological examination, routine laboratory tests and electroencephalogram, and a staff evaluation. We therefore find no reversible error occurred by allowing Dr. Moreau to testify, even though Dr. Murney was present and available to testify.

■ Appellant also urges that the trial court erred in instructing the jury that the factual issues were admitted and that the sole issue remaining for their determination was whether Harper was guilty or not guilty by reason of insanity at the time of the robbery.[2] The

appellant alleges that the trial court in effect directed a verdict of guilty, similar to the situation that arose in United States v. Skinner, 5 Cir. 1971, 437 F.2d 164.

In *Skinner*, this Court held that it was harmful error for the trial judge to charge a jury that they must return a verdict of guilty unless they found that the defendant lacked the mental capacity to commit the offenses charged. We believe *Skinner* is clearly distinguishable from the case at bar, however, for *Skinner* involved a comment by the trial judge on an admission of the defendant. Here, defense counsel stipulated in open court that the allegations contained in the indictment were true. Thus the sole disputed issue for the jury's determination was the appellant's mental condition at the time of the robbery. We hold that the quoted (footnote 2) instruction to the jury was not improper in this situation. See, e. g., United States v. Brown, 1970, 138 U.S.App.D.C. 398, 428 F.2d 1100.[3]

Appellant's final point on appeal is that the court's refusal of a motion for mistrial because of certain remarks by the prosecutor during closing argument using the term "irresistible impulse" was prejudicial error. The point was raised by motions for a corrective instruction and for mistrial.[4]

2. The court's charge to the jury was:
"The factual allegations set forth in counts I and II of the indictment are admitted by the Defendant, but the Defendant claims that he is not guilty because he was insane at the time and thus not legally responsible for his acts. The only issue for your determination is whether the Defendant is guilty or not guilty by reason of insanity at the time of the offenses charged in the indictment."

3. *Brown* principally concerned whether a defense counsel's stipulation as to the veracity of the factual allegations proffered by the government is so similar to a plea of guilty as to require the application of the provisions of Rule 11, F.R. Crim.P., requiring personal examination of the defendant by the court at the time of the stipulation as to the defendant's understanding of the stipulation and its

effect and the voluntariness thereof. The D.C. Circuit held in *Brown* that Rule 11 does not apply in this situation. The appellant here, however, has not raised this issue on appeal. We do not consider it.

4. During the prosecutor's closing argument the following took place:
"I think we all can conclude the purpose of the defendant in going to that bank that day, as was said before, was to case the bank out, to check out the bank, to make up his mind to see whether the bank was suitable to be robbed or whether this was the bank he wanted to rob or whatever. But whatever the reason, it certainly shows a premeditation on his part. It shows a conscious ability to conform his conduct, his desires. It negates any presumption of impulse, that the defendant robbed this

708

The insanity test employed in this Circuit was defined in Blake v. United States, 5 Cir. 1969, en banc, 407 F.2d 908. *Blake* rejected the "irresistible impulse" theory, and adopted the standard of Section 4.01, of the A.L.I. Model Penal Code, for use in determining insanity where the defense of insanity is "in issue":

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

(2) As used in this Article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." (407 F.2d 916)

Appellant maintains that the prosecutor's references to the "irresistible impulse" definition confused the jury as to the proper legal test of insanity they were to apply, and this misconception caused the guilty verdict. We disagree. The use of the term by the prosecutor described it as "the irresistible impulse test *as far as* layman's terms go", and the Court in responding to defense counsel's objection that the prosecutor's comments were an incorrect

bank on a moment's impulse as the defense might wish you to believe.

MR. ORBACH: Objection, Your Honor. I never stated that this was impulse.

THE COURT: I think this is all fair comment. Overruled."

Later the prosecutor argued:

"And the next test of temporary insanity which the Court will give you is, even if he did understand the wrongfulness of his act was he unable to conform, substantially unable to conform his conduct to the requirements of the law because of some mental disease or defect. That has been described as the irresistible impulse tests as far as layman's terms go.

MR. ORBACH: Objection, Your Honor. Not the irresistible impulse test.

THE COURT: The irresistible impulse test is not the way we define the law. I will define it for you later, members of the jury.

MR. ORBACH: I ask the Court to instruct the jury to disregard the comments of the prosecutor as it is an incorrect statement of the law.

THE COURT: I don't necessarily think it is incorrect; that is to say, if you want to characterize the rule as an irresistible impulse test, that might be a label that one would put on it like you would a label or a shortcut—it doesn't state the whole of the law, nor in fact are those words used in the test that we will give you, but it might be something that would be a little better understood by the jury under Mr. Oertel's argument.

MR. OERTEL: Thank you, Your Honor.

Well, as I have shown you before, his behavior completely negates any presumption of impulse. This was a planned bank robbery. He went in there two days before the robbery, checked over the bank, then went in the bank with his guns, presented the bag to the teller with his instructions, carried out the bank robbery, as he had undoubtedly had planned before, and took precautions to instruct the teller not to sound the alarm and then left the bank."

Following the conclusion of the prosecutor's argument the following motions were made by Appellant's counsel:

"MR. ORBACH: If the Court please, may we approach the Bench?

THE COURT: Let the jury go out. Thereupon, the jury retired from the courtroom, after which the following proceedings were had:)

MR. ORBACH: If the Court please, the defendant moves for a mistrial at this time in that the Court had misapplied the law and the instruction regarding impulse *is not* a correct statement of the law by either the prosecutor or the Court and that no corrective instruction at this time could correct that.

Further, Your Honor, I would ask that some corrective instruction be given to clarify that we are not concerned with a question of impulse at all.

THE COURT: Motion denied. Anything else?

MR. ORBACH: Two motions, Your Honor. One is for the corrective instruction and the other is for a motion for mistrial.

THE COURT: Both denied."

statement of the law observed (in the jury's presence):

"I don't necessarily think it is incorrect; that is to say, if you want to characterize the rule as an irresistible impulse test, that might be a label that one would put on it like you would a label or a shortcut—it doesn't state the whole of the law, nor in fact are those words used in the test that we will give you, but it might be something that would be a little better understood by the jury under Mr. Oertel's argument."

The jury could scarcely have been misled, particularly since during the trial the judge twice gave the jury the *Blake* definition of insanity, once at the very beginning of the trial and again during his closing instructions. We think in the circumstances here that if the prosecutor's use of the term "irresistible impulse" in his closing argument and the judge's ruling thereon was error, it was harmless error at most. See, e. g., United States v. Baird, 2 Cir. 1969, 414 F.2d 700.

We fail to find merit in any of the appellant's contentions. His judgment of conviction is

Affirmed.