THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THEODORE ROSS, Defendant-Appellant.

First District (4th Division)   No. 77-1050

Opinion filed August 17, 1978.

Ralph Ruebner and Richard J. Geddes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the circuit court of Cook County. The defendant, Theodore Ross, was convicted after a jury trial of the offense of murder in violation of section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2)). The defendant was sentenced to a term of 50 to 150 years in the Illinois State Penitentiary.

There are nine issues presented for review: (1) whether the defendant was proven sane beyond a reasonable doubt; (2) whether or not the trial judge erred in refusing to tender a not-guilty verdict although the jury finds the defendant to be sane at the time of the incident; (3) whether or not the trial court erred in allowing the State to impeach a defense witness; (4) whether or not the trial court erred in allowing into evidence love letters written to the defendant by a witness; (5) whether or not the trial court erred in limiting the scope of the direct examination of an expert witness; (6) whether or not the trial court erred in instructing the jury on the defense of insanity; (7) whether or not the State was permitted to give an improper closing argument to the jury; (8) whether or not the errors complained of by the defense are cumulatively of such magnitude

so as to warrant a new trial; and (9) whether or not the sentence imposed was excessive.

The facts of the case are on March 10, 1975, Robert Abrams returned home to the apartment which he shared with his mother. He was returning from working as a maintenance man in the same apartment complex in which he lived. He testified when he entered the apartment he noticed a mirror in the apartment was broken, his mother's shoes and eyeglasses were on the floor and there were blood stains on the carpet. Abrams could hear water running in the bathroom. Abrams went to the bathroom and found his mother in a bathtub full of bloody water. Abrams then called the police. He returned to the bathroom and pulled his mother from the tub. He then noticed his mother's right eye was closed and badly battered, there was a gash in her forehead and holes in her throat. Abrams additionally testified the defendant and his, Abrams', mother often sat in the apartment drinking coffee. Abrams testified there was an unknown quantity of money missing from the apartment.

The next witness for the prosecution was the local police chief. He arrived on the scene and observed the body of the victim with multiple stab wounds in the head and neck area. He conferred with some residents of the apartment complex and proceeded to the defendant's apartment in the complex. The chief and some other officers met the defendant's sister. They then proceeded to the home of defendant's girlfriend where they found the defendant. They placed the defendant under arrest and recovered a paper bag filled with damp clothes. They also advised the defendant of his constitutional rights. Ross was then returned to the scene of the crime and subsequently was taken to the police station. Ross was again given his "Miranda" rights and signed a form saying they had been given to him and that he understood them. Ross was questioned by the officers and gave a number of conflicting statements. Ross then was permitted to meet privately with his girlfriend and spent one-half hour alone with his pastor. Ross was questioned again and then confessed to stabbing Mrs. Abrams with a kitchen knife, trying to choke her, beating her over the head with a two-by-four, and then stabbing her again. Ross then placed her face down in a bathtub full of water. The chief indicated he knew the defendant, had used him on a number of occasions as a narcotics informant, and saw him around the station three to five times a week.

The next witness for the prosecution was a pathologist for the Cook County Medical Examiner. He testified he had performed an autopsy on the victim. He said he had found a laceration on the right side of the forehead, an abrasion above the right eyebrow, and another abrasion below the laceration; two lacerations on the rear of the head; 10 stab wounds on the anterior aspect of the neck, one penetrating the larynx and

vocal cord and another penetrating to the spine; six bruises on the right side of the neck and one elongated bruise on the left; four stab wounds on the left side of the chest and one on the right; one stab wound two inches above the nipple; seven stab wounds in the back, one of which penetrated the lung; two stab wounds on the right hand, three stab wounds on the left hand; and the right forearm was broken. The internal examination revealed hemorrhaging along the right rear aspect of the head; a scalp fracture; epidural hemorrhages on the right side of the brain; subdural hemorrhages on both sides of the brain; subarachnoid hemorrhages and contusions in the brain and the cerebellum; the larynx and the vocal cord were lacerated and one wound penetrated the neck to the lower vertebral area. The pathologist felt death resulted from the head and neck injuries and the laceration of the left lung.

An assistant State's Attorney then testified he had taken the confession from the defendant and read the confession to the jury. Defense counsel did not object.

The defendant made a motion in limine to exclude any evidence of the impregnation of a defense witness, defendant's girlfriend, by the defendant and also any evidence of the termination of her pregnancy by an abortion. The motion was denied, further argument was then heard on the motion and the motion was again denied. Defense counsel then stipulated to the pregnancy by the defendant and the abortion. Defense counsel also stipulated to four love letters written to the defendant by the defense witness.

The defendant's girl friend testified for the defense. She had known the defendant for a year prior to the murder. She felt Ross "needed help". The defendant's mother testified she felt the defendant needed psychiatric care and had needed it for the last 12 or 13 years prior to the incident. She had never sought such care.

A court-appointed psychologist testified he had examined the defendant and found him to have overall good contact with reality. Another psychologist testified the defendant could not be considered a psychotic. A third psychologist testified he believed the defendant to be schizophrenic. On cross-examination he indicated he had not examined the defendant ever; however, one of his assistants had. A psychiatrist then testified he felt the defendant had a schizophrenic process.

A conference on instructions was then held in chambers. The State submitted 13 instructions, one of which was objected to by defense counsel. The instruction objected to by the defense was one which defined mental disease or defect. The instruction is the IPI Criminal Instruction No. 24.01. Defense counsel's objection was overruled. The trial judge then noted the People had submitted four verdict forms, including the simple "not guilty." The trial judge indicated he did not feel

the evidence in this case warranted the giving of this verdict. Defense counsel originally indicated he wanted this verdict included and then acquiesced to its elimination. The jury was given two forms of "not guilty by reason of insanity." The trial judge then noted the defense counsel was not objecting to the exclusion of the simple "not guilty" verdict for the record.

Closing arguments were heard and the jury retired to deliberate. The jury then returned with a verdict of guilty.

After post-trial motions and a hearing in aggravation and mitigation the defendant was sentenced to a term of 50 to 150 years in the Illinois State Penitentiary. This appeal is from the judgment of conviction and sentence.

■■ ■ The first issue presented for review is whether or not the defendant was proven sane beyond a reasonable doubt. It is undisputed once the issue of the sanity of the defendant is raised, the burden of proof shifts to the State to prove the sanity of the defendant at the time of the commission of the crime. In the instant case, the only living witness to the murder was the defendant himself. He confessed to the crime and was able to give a very exact account of precisely how he committed the crime. This account tallied with the report of the medical examiner's testimony as to how the victim was injured and the cause of death was those injuries. In order to meet the burden of proof, the State is not required to produce expert testimony as to the sanity of the defendant on the date of the offense, but may rely on the facts in evidence and the inferences the jury may draw from those facts. (*People v. Lono* (1973), 11 Ill. App. 3d 443.) In addition, the question of the sanity of the defendant is a question for the trier of fact. We cannot disturb their determination unless it is so erroneous as to indicate the verdict was based on passion or prejudice. (*People v. Ford* (1968), 39 Ill. 2d 318.) The facts of this case, as given above, do not allow us to disturb the determination of the jury.

■■■ The second issue the defendant raises on appeal is whether or not the trial court erred in omitting the simple "not guilty" verdict in the verdicts given to the jury. We note at the outset the State is correct in its argument the defense counsel waived the submission of the not guilty verdict by failing to object to the trial court's elimination of the verdict. The State's citation of the cases of *People v. Jones* (1975), 60 Ill. 2d 300, *People v. Helm* (1968), 40 Ill. 2d 39, and *People v. Harris* (1965), 33 Ill. 2d 389, are correct and support the State's position. However, based on the facts of this case and the constitutional arguments raised by the defendant we have examined the record thoroughly in order to reach the correct decision. From the opening argument of this case, through the testimony of the prosecution's witnesses, through the reading of the defendant's confession to the jury, through the testimony of the defense witnesses,

through the conference on instructions, through the closing arguments, through the pretrial and post-trial motions and liberal argument thereupon, the question of fact as to whether or not the defendant had committed the acts in question which resulted in the death of the victim was never raised. Counsel for both sides, in effect, stipulated to the fact the defendant had committed the acts in question. The only defense raised by the defendant's very able trial counsel was the issue of the sanity of the defendant at the time of the commission of the acts. There was no question of fact as to whether or not the defendant had committed the acts, only as to his sanity and there were two "not guilty by reason of insanity" verdicts given by the trial judge to the jury. The jury as the trier of fact chose not to believe the defense so ably presented by trial counsel. While as a general rule, we could not condone the actions of the trial judge and counsel for the prosecution and defense in omitting a "not guilty" verdict, given the peculiar set of facts presented by this record, we believe the trial judge acted correctly when he only gave the "not guilty by reason of insanity" verdicts. This finding is strictly limited to the facts of this case.

■■ The third and fourth issues raised by the defendant on appeal are whether or not the trial court erred in denying the motion in limine concerning the pregnancy and subsequent abortion of a defense witness and the introduction of the love letters written by the witness to the defendant. In the instant case the fact the defendant was the "boyfriend" of the witness was a fact brought out on direct examination by the defense and as such it is proper for the prosecution to pursue the matter on cross-examination. It has a direct bearing on the creditability of the witness. (*People v. Jones* (1975), 60 Ill. 2d 300.) Regarding the introduction of the love letters, the defense cannot stipulate to the introduction of evidence and then complain on appeal the introduction was error. *People v. Williams* (1966), 36 Ill. 2d 194.

■■ The fifth issue raised by the defendant is whether or not the trial court improperly restricted the scope of the direct examination by one of defendant's expert witnesses. The defendant would like this court to create an exception to the rule enunciated by the Illinois Supreme Court in *People v. Hester* (1968), 39 Ill. 2d 489. We cannot agree. The facts of this case fall squarely under the facts in *Hester*. The defense would like to use the examining physician as a conduit for the self-serving statements of the defendant to the witness, after the commission of the crime and while being medically examined by the witness. The supreme court has said it will not allow this and accordingly, we cannot allow it.

■■ The sixth issue raised by the defendant was whether or not the instruction given the jury on mental disease or defect was improper. The instruction in question is IPI Criminal No. 24.01(B). The Illinois Supreme

Court has previously criticized the failure of the trial court to give an instruction on the terms "disease" and "defect." (*People v. Carpenter* (1957), 11 Ill. 2d 60, 67.) This instruction is intended to avoid just such criticism and the giving of it by the trial court was correct.

■■■ The seventh issue raised by the defendant is whether or not the closing argument of the State was improper. This issue was not raised in the post-trial motions and is waived for the purpose of appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280.) In addition, our examination of the record discloses no impropriety in the closing argument by the State. The comments of the prosecution were fair inferences from the evidence presented at the trial and as such were proper prosecutorial argument. *People v. Costillo* (1970), 130 Ill. App. 2d 387.

■■ The eighth issue raised by the defendant is whether or not the issues raised by the defendant are of such magnitude as to warrant a new trial or whether or not there should be a new trial based on the incompetence of trial counsel. Even though many of the issues raised by the defendant were not preserved on post-trial motion, we have nonetheless considered them on the merits for the purpose of this appeal. The errors complained of by the defendant we have found not to be error by the trial court. Considering the facts of this case we are impressed with the fact defendant received a very fair trial. As to the issue of the incompetence of trial counsel, the defendant was ably represented by experienced trial counsel. We will not find a trial counsel to be incompetent for the exercise of his best judgment on questions of judgment and strategy.

■■ The last issue raised by the defendant is the severity of his sentence. This court will not disturb the sentence imposed by the trial judge unless there is a clear abuse of discretion. The instant case was a brutal and vicious murder of a person well known to the defendant. The sentence will not be disturbed by this court. *People v. Perruquet* (1977), 68 Ill. 2d 149.

Accordingly, for the reasons contained herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON, P. J., and LINN, J., concur.