688 F.2d 1181
 UNITED STATES of America ex rel. Theodore ROSS, Petitioner-Appellant,
v.
Gayle FRANZEN, Director, Department of Corrections, and
Dennis Wolff, Warden, Joliet Correctional Center,
Respondents-Appellees.
 No. 80-1118.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 26, 1982.
Decided Sept. 24, 1982.
 
 Michael Mulder, Valparaiso, Ind., for petitioner-appellant.
 Jack Donatelli, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.
 Before CUMMINGS, Chief Judge, and PELL, BAUER, WOOD, CUDAHY, POSNER, ESCHBACH and COFFEY, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 Petitioner Ross appeals the dismissal of his petition for a writ of habeas corpus. Ross had been found guilty of murder in an Illinois court. He claimed in his federal habeas petition that the state trial court's failure to submit a "not guilty" verdict form to the jury violated his Sixth and Fourteenth Amendment rights. At issue on appeal is whether the district judge correctly found that Ross had not contested his commission of the homicide but had relied solely on a defense of insanity.
 
 I. FACTS
 A. State Trial Court Proceedings
 
 2
 The evidence giving rise to the state court conviction is detailed in People v. Ross, 63 Ill.App.3d 884, 20 Ill.Dec. 688, 380 N.E.2d 897 (1978). We summarize parts of that evidence pertinent to this appeal.
 
 
 3
 On March 10, 1975, the victim's son found his mother's body in their apartment, in a bathtub full of bloody water. She had been beaten and had received multiple stab wounds. He summoned the police. The victim's son also testified that his mother and Ross had frequently had coffee together in the apartment. The police chief testified that, after inspecting the scene and conferring with neighbors, he located Ross whom he placed under arrest. He recovered a paper bag filled with damp clothes from Ross. Ross was advised of his constitutional rights, taken to the place of the crime and then to the police station. He was given his Miranda warnings, signed a form indicating his understanding of the warnings, and was then interrogated by police. During the interrogation, Ross originally made several conflicting statements. He then conferred privately with his pastor and his girlfriend. Following further questioning, Ross confessed to the murder.
 
 
 4
 The confession depicted a brutal murder: fifteen to twenty seconds of repeated stabbing; beating the victim with a two-by-four on the arms and the head; ensuring the victim's silence by jamming a knife down her throat.[1] This confession was introduced into evidence, with no objection from the defense.
 
 
 5
 Both the police chief, who had known Ross for some time, and the Assistant State's Attorney testified that they believe Ross was capable of conforming his conduct to the requirements of the law.
 
 
 6
 The defense motion for a directed verdict at the close of the State's case was denied. Ross then called as witnesses his mother, girlfriend, three psychologists, and one psychiatrist. The testimony of each was directed toward establishing Ross' mental incapacity. Ross' girlfriend described various instances of strange conduct by the defendant. Ross' mother related the strange accidents and behavior that had affected Ross. The psychologists and psychiatrist testified that Ross suffered from a latent schizophrenic disorder.
 
 
 7
 At the close of the evidence, a conference on instructions was held in the judge's chambers. The State submitted four verdict forms to be given to the jury: (1) guilty; (2) not guilty; (3) not guilty by reason of insanity and in need of further mental treatment; and (4) not guilty by reason of insanity and not in need of further mental treatment. The following colloquy then ensued:
 
 
 8
 Court: Let's go over the verdicts now .... They brought up four verdicts, one for plain not guilty. I don't think you even want that in there, do you?
 
 
 9
 Defense Counsel: Yes, your Honor.
 
 
 10
 Court: So he can walk out on the street without going to the hospital? Three verdicts will be given. No objections....
 
 
 11
 In closing argument, defense counsel first summarized the evidence supporting a verdict of not guilty by reason of insanity. He then invited the jury to consider whether the State had really proved that Ross had committed the acts in question. To this end, he attacked the State's tangible evidence and pointed out that only Ross' confession directly linked him to the crime. Defense counsel referred to Ross' close relationship with the police, suggesting that the confession was a product thereof. Ross' attorney then reviewed again the evidence relating to Ross' claimed insanity.
 
 
 12
 The three verdict forms agreed upon at the instructions conference were then submitted to the jury. The judge instructed the jury: "When you have unanimously agreed upon your verdict you will select the form which reflects your verdict and sign it as I have stated." A verdict of guilty was returned. Ross was sentenced to a prison term of 100-150 years.
 
 B. State Appellate Court Proceedings
 
 13
 Petitioner argued to the state appellate court that the trial court erred in omitting the plain not guilty verdict from the verdict forms given to the jury. Although the appellate court recognized the defense's failure to object properly to this alleged error at trial, the court decided the issue on the merits. The appellate court stated:
 
 
 14
 From the opening argument of this case, through the testimony of the prosecution's witnesses, through the reading of the defendant's confession to the jury, the conference on instructions, through the closing arguments, through the pre-trial and post-trial motions and liberal argument thereupon, the question of fact as to whether or not the defendant had committed the acts in question which resulted in the death of the victim was never raised. Counsel for both sides, in effect, stipulated to the fact the defendant had committed the acts in question. The only defense raised by the defendant's very able trial counsel was the issue of the sanity of the defendant at the time of the commission of the act.... While as a general rule, we could not condone the actions of the trial judge and counsel for the prosecution and defense in omitting a "not guilty" verdict, given the peculiar set of facts presented by this record, we believe the trial judge acted correctly when he only gave the "not guilty by reason of insanity" verdicts.
 
 C. District Court Proceedings
 
 15
 In his petition for a federal writ of habeas corpus, Ross alleged that the trial court had in effect directed a verdict against him and had deprived him of the right to have a jury determine whether he was guilty of each element of the charged crime beyond a reasonable doubt. The district judge found that the Illinois Appellate Court's holding that Ross had not contested his actual commission of the murder was entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(1976) and that Ross' arguments did not cast doubt on the presumption. The judge below also determined that he was bound by the finding of the appellate court that Ross' counsel had stipulated to the acts in question. Concluding that the state trial judge had not erred in submitting only the three verdict forms, Judge Leighton dismissed the petition.
 
 II. DISCUSSION
 
 16
 Initially, we note that the petitioner's failure to make a formal objection to the alleged error at trial does not bar us from now addressing the issue on which this appeal turns because the state appellate court decided the merits of the constitutional claim despite the lack of preservation. Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). In Sumner, a constitutional challenge to identification procedures was first raised before the California appellate court which found the procedures constitutional. The defendant later petitioned for a federal writ of habeas corpus. In considering the case, the United States Supreme Court stated that "if the state appellate court ... had declined to rule on the ... issue because it had not been properly raised in the trial court, the federal court would have been altogether barred from considering it absent a showing of 'cause' or 'prejudice.' " Id. at 547, 101 S.Ct. at 769. Because the appellate tribunal had addressed the issue, however, the Supreme Court recognized that it could be properly raised in a petition for a writ of habeas corpus. See id.A. Presumption of Correctness
 
 
 17
 Factual findings of a state trial or appellate court are entitled to a presumption of correctness in a federal habeas proceeding. 28 U.S.C. § 2254(d) (1976); Sumner, 449 U.S. at 547, 101 S.Ct. at 769. We must first consider whether the Illinois Appellate Court's findings regarding Ross' "never contesting that he committed the acts in question" is a factual finding warranting the presumption of correctness. The Supreme Court stated in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the precursor of section 2254(d), that the phrase "issues of fact" refers "to what are termed basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators ....' " Id. at 309 n. 6, 83 S.Ct. at 755 n. 6 (quoting Brown v. Allen, 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953)(opinion of Frankfurter, J.)). By contrast, in Cuyler v. Sullivan, 446 U.S. 335, 341-42, 100 S.Ct. 1708, 1714-1715, 64 L.Ed.2d 333 (1980), the Supreme Court held that if the issue is one requiring an application of legal principles to the historical facts of the case, the presumption does not apply and the state court holding is open to review de novo in a federal habeas proceeding. See Brewer v. Williams, 430 U.S. 387, 403-04, 97 S.Ct. 1232, 1241-42, 51 L.Ed.2d 424 (1977).
 
 
 18
 The issues raised in Brewer and Cuyler are illustrative of those which the Court has characterized as requiring an application of law to fact. In Brewer, the question whether a defendant had waived his right to counsel was held not to be a factual determination within the meaning of section 2254. 430 U.S. at 395-97, 402-04, 97 S.Ct. at 1237-39, 1241-42. In Cuyler, the Court held that the roles played by attorneys representing co-defendants was a question of historical fact but the determination whether the attorneys' actions constituted multiple representation was a mixed question of law and fact. 446 U.S. at 342, 100 S.Ct. at 1715. If the Supreme Court had not touched on this issue since Cuyler, we would be compelled to find that the district court erred in applying a presumption of correctness to the state court's finding that Ross did not contest his having committed the alleged acts.
 
 
 19
 In the more recent case of Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), however, the Court held that section 2254(d) was applicable to the determination whether pretrial identification procedures were impermissibly suggestive. Justice Brennan, in a dissent joined by Justices Marshall and Stevens, strongly questioned the applicability of section 2254(d) to this issue, which he regarded as analogous to the determinations required in Cuyler and Brewer. 449 U.S. at 555-59, 101 S.Ct. at 773-775 (Brennan, J., dissenting).
 
 
 20
 In light of Sumner, we find it difficult to conclude that the issue presented in the case at bar was clearly outside the scope of section 2254(d). Rather than premising our disposition of this case on Supreme Court precedent that would appear to be in a state of evolution, however, we will assume for purposes of this appeal, that the presumption of correctness was inapplicable.
 
 
 21
 B. Prima Facie Case of Constitutional Violation
 
 
 22
 When a district court is confronted with a habeas petition alleging a constitutional violation which requires the application of federal law to the facts, the court must first determine whether the petitioner has stated a prima facie case of a constitutional violation. United States ex rel. Grundset v. Franzen, 675 F.2d 870, 877 (7th Cir. 1982). In making this determination, the court should first examine the state court record. Id. at 877-78. Such review of the state proceedings may be dispositive, especially if the issue is one regarding which the petitioner would be unable to adduce additional evidence at a further evidentiary hearing. Id. at 877-80.
 
 
 23
 The judge below specifically indicated in his disposition of Ross' habeas petition that he had reviewed the entirety of the state record. What such a review demonstrates is, first, that Ross pleaded not guilty. We do not think this is dispositive as to the issue before this court-whether Ross ever contended that he had not committed the acts in question-because at the time Ross entered his not guilty plea, a defendant in an Illinois court had no option but so to plead if he wanted to raise the defense of insanity. Illinois procedure did not provide for a plea of "not guilty by reason of insanity." Ill. Rev. Stat. ch. 38, § 113-4(a) (1975).[2] Ross' not guilty plea is therefore consistent with his claim of mental incompetency at the time of the slaying. Second, defense counsel indicated in his opening argument that Ross was raising a defense of insanity; he gave no indication that Ross was claiming he never committed the alleged acts. Third, the record reveals the petitioner's confession. This was no mere admission of guilt; rather, it was a gruesome account of the precise manner in which the murder was accomplished. Common sense suggests that one able to describe the murder in such detail had more than passing knowledge of the event. Fourth, the defense moved for a directed verdict. In this case, that motion was completely consistent with the defense's claim that the State's case lacked sufficient demonstration of mens rea due to Ross' alleged mental problems. Fifth, all of the witnesses called by Ross directed their testimony to the defendant's mental capacity; in fact, three of the five witnesses called by the defendant were mental health practitioners. Finally, after the in-chambers conference on verdict forms, which we discuss infra, defense counsel made his closing argument. He both began and finished with argument relating to Ross' mental state. He did, in the midst of argument, point out that only the confession linked Ross directly to the crime and further suggested that this confession was a product of Ross' demonstrated interest in maintaining a close relationship with the police. Although this argument arguably represents some attempt to suggest Ross might not have performed the acts he described so vividly in his confession, counsel's argument also suggests yet another demonstration of a mentally unfit person, someone who would concoct a chilling murder confession in order to "please" the authorities whom he respected.
 
 
 24
 Before closing argument, a conference regarding verdict forms to be submitted to the jury was held in the chambers of the trial judge. The relevant portion of that conference is quoted in Section I, supra. The transcript of this conference demonstrates that defense counsel initially requested a straight not guilty verdict form. The court suggested that this was inappropriate and then stated, "No objections." Even if "No objections" was stated emphatically, it would seem that defense counsel intent on arguing that his client did not commit the alleged acts would have at least attempted to make some statement for the record. Although the fact that counsel failed to preserve this issue in appropriate form does not preclude a federal court from considering the issue on petition for habeas, see Section II(A) supra, we do feel that counsel's failure to object is relevant to the merits of the argument urged before this court.
 
 
 25
 Our review of the record leaves little, if any, doubt, therefore, that Ross did indeed premise his claim of not guilty solely on his mental capacity at the time the crime was committed and did not challenge the State's claim that he performed the acts in question. If this were the case, the judge below could properly have held that Ross failed to state a prima facie case of a constitutional violation, even if no presumption of correctness were accorded the findings of the Illinois Appellate Court.
 
 
 26
 We recognize, however, that the instant case is distinguishable from United States v. Harper, 460 F.2d 705 (5th Cir. 1972), on which the judge below relied. In Harper, the defense counsel had stipulated in open court that the allegations contained in the indictment were true. Id. at 707. Following this stipulation, the trial court instructed the jury that: " 'The only issue for your determination is whether the Defendant is guilty or not guilty by reason of insanity at the time of the offenses charged in the indictment.' " Id. at 707 n. 2. The Fifth Circuit held that the instruction was proper under the circumstances of that case. Ross is correct in distinguishing Harper on the ground that the present case involves no such explicit stipulation as to whether he committed the acts of the murder.
 
 
 27
 Further, in United States v. Brown, 428 F.2d 1100 (D.C. Cir. 1970), the District of Columbia Circuit held that when a criminal defendant seeks to waive trial on all issues except insanity, the trial judge should address the defendant personally in determining whether the waiver is made voluntarily and with an understanding of the consequences, unless the stipulation is made in open court. Id. at 1103-04. Nothing in the record of the instant case suggests that the trial judge held any discussion with Ross regarding whether he was stipulating to commission of the alleged acts.[3]
 
 
 28
 Even if the district judge did err, which is by no means clear in our view, in concluding from his review of the record as well as the review made by the state appellate court, that Ross had not denied his performance of the murderous acts, the dismissal of Ross' petition must be upheld if we find that any error committed by the State trial court was harmless.
 
 C. Harmless Error
 
 29
 The Sixth Circuit case of Krzeminski v. Perini, 614 F.2d 121 (6th Cir. 1980), cert. denied, 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84, involves a factual situation similar to that presented in Ross' case. Krzeminski was convicted of murder in state court. He had admitted to several witnesses, and subsequently admitted at trial, that he had committed the murder. He defended himself on the ground that he was not guilty by reason of insanity or, in the alternative, could be found guilty only of manslaughter because of his extreme anger at the time of the killing. The trial judge explicitly instructed the jury that a verdict of straight not guilty could not be returned because of Krzeminski's admission that he performed the alleged acts. 614 F.2d at 124. The Sixth Circuit found that this instruction constituted an error of constitutional dimension. Nevertheless, the court found the error harmless under the standard enunciated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The court found that the only effect of the judge's instruction that the jury could not acquit the defendant was to minimize the possibility of jury nullification. "Only an irrational jury could have acquitted the defendant outright." 614 F.2d at 125.
 
 
 30
 The Sixth Circuit's statement regarding jury nullification is equally applicable to the case at bar. In one sense, Krzeminski is not compelling precedent for the application of harmless error to the instant case. Like Harper, Krzeminski involved an express stipulation that the defendant had committed the acts charged. In another sense, however, the present case presents stronger reasons than Krzeminski did for applying the harmless error doctrine. Nothing in the record before this court suggests that the judge in Ross' case gave an express instruction that precluded a verdict of not guilty. In fact, Instruction No. 11, which specified what the State was required to prove in order to sustain the charge of murder included the propositions: "That the defendant performed the acts which caused the death of Margaret Abrams" (emphasis added). The following instruction to the jury was: "When you have unanimously agreed upon your verdict you will select the form which reflects your verdict and sign it as I have stated." Instruction No. 12. Although this instruction could be read as implying that a straight not guilty verdict was impossible, in light of the forms offered, we believe that it would have been less inhibiting to a jury determined to find the defendant innocent than the explicit instruction given in Krzeminski. Reading Instructions Nos. 11 and 12 together, a reasonable jury would necessarily have concluded that, unless Ross had performed the alleged acts, he could not be found "guilty" whatever verdict forms were presented. We hold therefore that any error committed by the state trial judge was harmless and that Ross' petition for habeas relief was properly dismissed.
 
 CONCLUSION
 
 31
 The district court applied a presumption of correctness to state appellate court findings that Ross had never contested his commission of the alleged acts. Utilizing the section 2254(d) presumption would appear consistent with Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).
 
 
 32
 Even if the district court erred in deferring to the state court findings, we believe the petition was properly dismissed because Ross failed to state a prima facie case of constitutional violation. An independent review of the state transcript, which was made by the district judge, strongly suggests that Ross did not contest his commission of the charged acts. Even if defense counsel's closing argument is read as putting in issue whether Ross performed the alleged acts of the murder, we believe that any error committed by the state judge was harmless. On these grounds the district judge properly found that Ross had not raised a constitutional issue requiring a further evidentiary hearing.
 
 
 33
 Although the procedure employed by the state trial judge in this case is not one to be generally condoned, we believe that in this particular case the defendant is not entitled to the issuance of a writ of habeas corpus.
 
 
 34
 The judgment of the district court dismissing Ross' petition is therefore
 
 
 35
 Affirmed.
 
 
 36
 CUDAHY, Circuit Judge, dissenting, with whom CUMMINGS, Chief Judge, joins.
 
 
 37
 Hard cases, as we all know, make bad law. This is an exceedingly hard case, as Judge Pell's recitation of all the gory details makes clear. And bad law cannot be far behind when the fundamentals of our criminal jurisprudence must be so egregiously slighted. I am sympathetic with the majority's dilemma when asked to free (subject to retrial) the apparent perpetrator of a gruesome crime in the name of a legal theory. However, the theory that a person accused of a crime is innocent until found guilty beyond a reasonable doubt by a jury of his peers is, I think, at the foundation of the Anglo-American system of criminal law; it responds to the fundamental demands of justice; and it must be closely guarded against erosion even in as difficult a situation as this one. Certainly the amorphous concept of harmless error, ultimately relied upon by the majority, should not be used to nullify the constitutional imperatives underlying our system of criminal law.
 
 
 38
 The majority here seriously mischaracterizes the issue in this case when it states the question on appeal as "whether the district judge correctly found that Ross had not contested his commission of the homicide but had relied solely on a defense of insanity," ante at 1. The real question before us is whether the trial court's failure to submit a straight "not guilty" verdict form to the jury violated the defendant's sixth and fourteenth amendment rights to have a jury determine guilt beyond a reasonable doubt. I believe that such a violation is clear on the record and in light of the great body of fundamental law incorporated in numerous precedents. Hence, I respectfully dissent.
 
 
 39
 * As I have suggested, it is basic to our adversary system of justice that a criminal defendant has the right to have a jury determine guilt beyond a reasonable doubt. Sandstrom v. Montana, 442 U.S. 510, 52023, 99 S.Ct. 2450, 2457-2458, 61 L.Ed.2d 39 (1979); Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 29 L.Ed.2d 491 (1968). It is similarly axiomatic that the Fourteenth Amendment requires the state to prove, again beyond a reasonable doubt, each element of the criminal offense charged. In re Winship, 397 U.S. 358, 361-64, 90 S.Ct. 1068, 1071-1072, 25 L.Ed.2d 368 (1970).[1] As the Seventh Circuit has stated,
 
 
 40
 (t)his right, emanating from the criminal defendant's constitutional right to trial by jury, is neither depleted nor diminished by what otherwise might be considered the conclusive or compelling nature of the evidence against him. This right is personal to the defendant, and, like his right to a jury trial, is one which he alone may waive; furthermore, in a situation wherein an understandingly tendered waiver is not forthcoming from the defendant, under no circumstances may the trial court usurp this right by ruling as a matter of law on an essential element of the crime charged.
 
 
 41
 United States v. England, 347 F.2d 425, 430 (7th Cir. 1965) (footnotes omitted) (emphasis supplied).
 
 
 42
 In the case before us, Ross pleaded not guilty to the charge of murder, thus placing in issue all essential elements of the offense, and putting the state to its burden of proving, beyond a reasonable doubt, Ross' guilt as to each element.[2] Contrary to the majority's apparent suggestion, this burden remained with the state regardless of what defenses Ross raised, regardless of which particular elements were expressly controverted by Ross, indeed regardless of whether Ross chose to put on any defense at all. United Brotherhood of Carpenters & Joiners v. United States, 330 U.S. 395, 410, 67 S.Ct. 775, 783, 91 L.Ed. 973 (1947).[3] As this court held in United States v. England, 347 F.2d 425, 431 (7th Cir. 1965):
 
 
 43
 Once the defendant has entered a plea of not guilty, everything material to a finding of his guilt is in controversy. Thus, under our system of jurisprudence, it is technically possible for a criminal defendant to enter a plea of not guilty, introduce little or no evidence in his own defense, and rely exclusively on his presumption of innocence and the possible inability of the prosecution to prove his guilt beyond a reasonable doubt. Thereupon, guilt is determined by the jury, not the court. United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 410 (67 S.Ct. 775, 783, 91 L.Ed. 973) (1946).
 
 
 44
 The fallacy of the majority's analysis can perhaps be best demonstrated by considering the situation of a criminal defendant who introduces no evidence and raises no defense at all, but simply elects to stand silent throughout his trial. Surely, this defendant could be characterized as "never contesting that he committed the acts in question." ante at 1184. Yet under our constitutional system, even this defendant is entitled to have the state prove, beyond a reasonable doubt, each element of the crime charged, and to have a plain "not guilty" verdict submitted to the jury. In re Winship, supra; see United States v. Bosch, 505 F.2d 78 (5th Cir. 1974).[4] Similarly, even this defendant would be entitled to habeas corpus relief if the trial judge, after listening to all the state's evidence, directed a verdict against the defendant or, what in my view amounts to the same thing, refused to submit a straight "not guilty" form to the jury. See Braley v. Gladden, 403 F.2d 858 (9th Cir. 1968);[5] Commonwealth v. Edwards, 394 Pa. 335, 147 A.2d 313 (1959).[6] And I fail to see why these principles should be deemed inapplicable merely because an insanity defense has been raised.
 
 
 45
 Of course, as with most other constitutional protections, a defendant may waive his right to have a jury determine guilt beyond a reasonable doubt. Such a waiver, however, cannot be presumed from a silent record, but must consist of "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The mere failure by counsel to object to an unfavorable court order or ruling does not meet this high standard, particularly since " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." Johnson, supra, 304 U.S. at 464, 58 S.Ct. at 1023 (citation omitted). See Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). Moreover, it has long been the law of this circuit that counsel may not stipulate to facts establishing the guilt of the accused without the defendant's consent. See Achtien v. Dowd, 117 F.2d 989, 993-94 (7th Cir. 1941) ("Accused's counsel had no authority to change (habeas petitioner's) plea nor to stipulate facts without his consent. To hold otherwise would constitute a denial of several rights guaranteed the accused by the Bill of Rights.")
 
 
 46
 Here, there is nothing in the record from which it could reasonably be inferred that Ross knew of or consented to the supposed stipulation that he committed the criminal acts in question.[7] Nor, as the majority concedes, did the trial judge address Ross personally in order to determine whether the alleged concession was made voluntarily and with an understanding of its consequences. See United States v. Brown, 428 F.2d 1100, 1103-04 (D.C. Cir. 1970). In light of these facts, I find it impossible to conclude that Ross knowingly and intelligently waived his right to have a jury determine, beyond a reasonable doubt, that he committed the criminal acts of which he was accused.
 
 II
 
 47
 Although I believe the foregoing analysis, in contrast to the majority's focus on Ross' insanity defense, constitutes the proper method of resolving this case and clearly dictates reversal of the district court's decision, I also have grave doubts about the "evidence" on which the majority relies to support its conclusion that Ross did not contest his commission of the crime. First, as the majority notes, Ross pleaded not guilty, thereby raising all possible questions of fact, see United States v. England, 347 F.2d 425, 431 (7th Cir. 1965). Whether or not this plea is "dispositive" of the issue before this court, it certainly does not support the conclusion that Ross stipulated to his commission of the crime. Second, the majority relies on the indication by defense counsel, in opening argument, that Ross was raising a defense of insanity, and on the fact that all the witnesses called by the defense directed their testimony to Ross' mental capacity. It is true that the main thrust of the defense's case was to show that Ross was mentally incompetent and, thus, could not be held legally responsible for the homicide. But this strategy did not preclude the defense from alternatively arguing-as it did-that, in fact, Ross did not commit the crime. See People v. Ford, 39 Ill.2d 318, 321, 235 N.E.2d 576, 578 (1968) (defendant may raise insanity defense and still contest commission of the crime). While the presentation of this alternative theory was not as robust as petitioner's insanity defense, there is ample evidence that the theory was indeed urged and, unlike the majority, I see no reason to disregard this evidence.
 
 
 48
 In this regard, I find particularly significant the closing argument of defense counsel, which plainly indicates that Ross did not concede commission of the murder but, in fact, challenged several aspects of the state's evidence.[8] Defense counsel argued that there was no eyewitness evidence that Ross had been at the scene of the crime,[9] that there was no testimony showing that he had washed blood stains out of the damp clothes recovered at the time of the arrest,[10] that there was insufficient time for such laundering to have taken place,[11] and that, in fact, the only evidence of Ross' guilt was "really just a confession" which the jury did not have to believe.[12] If Ross had conceded commission of the acts charged, there would have been no reason for defense counsel to make these arguments, which plainly challenged the sufficiency of the state's evidence of Ross' guilt.[13]
 
 
 49
 Third, the majority points to Ross' confession, which was introduced into evidence without objection from the defense. However, the mere introduction of an extrajudicial confession, particularly one whose authenticity and reliability are challenged, is in no way comparable to a judicial admission of guilt; if it were otherwise, there would be no need to conduct a trial for any defendant who had confessed before trial to commission of the crime in question. And I fail to see the constitutional relevance of the majority's characterization of the confession as "no mere admission of guilt; (but) a gruesome account of the precise manner in which the murder was accomplished," ante at 1185.
 
 
 50
 Fourth, the majority notes that Ross moved for a directed verdict at the close of the state's evidence. Although the majority claims that this action "was completely consistent" with Ross' exclusive reliance on an insanity defense, ante at 1185, it is difficult for me to view the motion as anything other than a challenge to the state's evidence of Ross' involvement in the crime, since up to that point in the trial there had been no significant evidence introduced tending to establish that Ross was mentally ill.
 
 
 51
 Finally, the majority discusses the jury instruction conference, held prior to closing argument in the chambers of the state trial judge. The relevant portion of this conference is quoted at page 1182 of the majority opinion. As the majority concedes, the transcript of the conference demonstrates that defense counsel initially and quite clearly requested a straight "not guilty" form. In my view, such a request strongly indicates that neither the defendant nor his counsel conceded commission of the crime. This inference is particularly strong where, as here, the request for a "not guilty" form comes on the heels of the trial judge's strong indication that he is not inclined to submit such a form. And the majority's suggestion, ante at 1185, that had Ross' counsel been intent on arguing that his client did not commit the alleged acts, he would have, at this point, "at least attempted to make some statement for the record" seems to me to blink the realities of trial practice. But regardless of whether a more vigorous (and perhaps more foolhardy) advocate would have persisted in his disagreement with the trial judge, I am convinced that the colloquy as a whole cannot be interpreted as a waiver of Ross' right to have the jury decide whether he committed the criminal acts of which he was accused.
 
 III
 
 52
 Understandably reluctant to rest its decision on the ground that the state trial court did not err in refusing to submit a "not guilty" form to the jury because the defendant (or his counsel) somehow stipulated to commission of the alleged criminal acts, the majority ultimately concludes that Ross' petition must be denied because "any error committed by the state judge was harmless." Ante at 1186. In reaching this conclusion, the majority relies heavily on Krzeminski v. Perini, 614 F.2d 121 (6th Cir.), cert. denied, 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980) in which the Sixth Circuit characterized as "a patent constitutional violation," a trial judge's instruction to the jury that a straight "not guilty" verdict could not be returned because of the defendant's in-court admission that he had killed the deceased, but held that an independent examination of the record demonstrated that the error was harmless beyond a reasonable doubt. The majority concedes, however, that "at least in one sense," Krzeminski is not analogous to the instant case, ante at 1186, since Krzeminski, like United States v. Harper, 460 F.2d 705 (5th Cir. 1972), involved an express stipulation (or judicial admission) that the defendant had committed the acts charged. Nevertheless, the majority goes on to reason that, in another sense, the case before us presents stronger reasons than did Krzeminski for applying the harmless error doctrine because "(n)othing on the record before this court suggests that the judge in Ross' case gave an express instruction that precluded a verdict of not guilty." Ante at 1186. It is undisputed, however, that the state trial judge here instructed the jury as follows:
 
 
 53
 You will be provided with three (3) forms of verdict. When you have unanimously agreed upon your verdict you will select the form which reflects your verdict and sign it as I have stated.[14]
 
 
 54
 In the face of this explicit instruction, I simply cannot accept the majority's conclusion that a reasonable jury would necessarily have concluded that, unless they determined that Ross had performed the alleged acts, he could not be found "guilty" regardless of what verdict forms were presented. Indeed, the Ninth Circuit, in Braley v. Gladden, 403 F.2d 858 (9th Cir. 1968), rejected just such an argument under circumstances quite similar to those of the instant case:
 
 
 55
 A jury is required to presume that an accused is innocent until he is proven guilty, and a court presumes that the jury applies only the law of which it is informed by the judge. Critical deficiencies cannot be supplied by inference or assumption as to the interpretation applied subjectively by twelve jurors, individually and collectively. While it may not be unreasonable to assume that the jury inferred from the instructions that it might be empowered to write its own form of a verdict of not guilty, it is equally reasonable to assume that the jury inferred that the judge intended that only one verdict was possible, a verdict of guilty upon the one and only form which he supplied.
 
 
 56
 403 F.2d at 860 (emphasis supplied).
 
 
 57
 Well-established precedent also persuades me that the majority's reliance on the harmless error doctrine in this case is fundamentally misplaced. As the Supreme Court stated in Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1966) "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." The Supreme Court has strongly intimated that the right to have a jury determine guilt beyond a reasonable doubt, as to each element of the crime charged falls within this category. See United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) ("a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelming the evidence may point in that direction."); Brotherhood of Carpenters & Joiners v. United States, 330 U.S. 395, 396, 408, 67 S.Ct. 775, 783, 91 L.Ed. 973 (1947) (trial judge "may not direct a verdict of guilty no matter how conclusive the evidence").[15] Similarly, this court has held that
 
 
 58
 (n)o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths. In our federal system, the Trial Court may never instruct a verdict either in whole or in part.
 
 
 59
 United States v. England, 347 F.2d 425, 431 (7th Cir. 1965), quoting Roe v. United States, 287 F.2d 435, 440 (5th Cir.), cert. denied, 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 28 (1961).
 
 
 60
 In light of these precedents, the majority's apparent belief that only an irrational jury could have acquitted the defendant in this case outright, seems to me beside the point. See Jackson v. Virginia, 443 U.S. 307, 317 n. 10, 99 S.Ct. 2781, 2788 n. 10, 61 L.Ed.2d 560 (1979) ("the factfinder in a criminal case has traditionally been permitted to enter an unassailable but unreasonable verdict of 'not guilty.' This is the logical corollary of the rule that there can be no appeal from a judgment of acquittal, even if the evidence of guilt is overwhelming."). Moreover, to base a finding of harmless error (as the majority alternatively appears to) on the possibility that a jury may disregard a trial judge's explicit instructions and return a verdict not included among the options presented to it[16], seems to me to expand the harmless error doctrine beyond all meaningful and justifiable limits. Indeed, in this regard, the words of Justice Frankfurter, reversing a conviction because of an improper jury charge and rejecting a similar "harmless error" argument in Bollenbach v. United States, 326 U.S. 607, 615, 66 S.Ct. 402, 406, 90 L.Ed. 350 (1946), seem particularly apt:
 
 
 61
 From presuming too often all errors to be "prejudicial," the judicial pendulum need not swing to presuming all errors to be "harmless" if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty. In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however, justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however, cumbersome that process may be.
 
 
 62
 I therefore respectfully dissent.
 
 
 
 [1]
 The confession is reported in greater detail in the Appendix to the dissent of the original panel decision in this case, United States ex rel. Ross v. Franzen, 668 F.2d 933, 945-46 (7th Cir. 1982)
 
 
 [2]
 Ill. Rev. Stat. ch. 38, P 115-2(b) (1981), addresses the circumstances under which an Illinois trial court may now accept a plea of guilty but mentally ill
 
 
 [3]
 Brown can be distinguished from the instant case on the ground that it was governed by Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 was, of course, inapplicable to Ross' state court trial. Nonetheless, we recognize that the Brown court suggested that a colloquy between judge and defendant was essential to preservation of the defendant's constitutional rights. 428 F.2d at 1103
 
 
 [1]
 The Supreme Court in Winship stated:
 Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.
 397 U.S. at 364, 90 S.Ct. at 1073.
 
 
 [2]
 As the Sixth Circuit recently noted:
 A plea of "not guilty" has at least two dimensions recognizable by this court. First, in pleading "not guilty" a defendant reserves in toto those constitutional rights fundamental to a fair trial. Included in this category of constitutional rights is the accused's right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. Boykin (v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ). Second, in pleading "not guilty," a defendant exercises his right to make a statement in open court that he intends to hold the government to strict proof beyond a reasonable doubt as to the offense charged. Byrd v. United States, 342 F.2d 939 (D.C. Cir. 1965).
 Wiley v. Sowders, 647 F.2d 642, 650 (6th Cir. 1981).
 
 
 [3]
 As the Supreme Court has recently reminded us,
 the constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless.... Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted as a burglar.
 Jackson v. Virginia, 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979).
 
 
 [4]
 United States v. Bosch involved a prosecution for conspiracy to distribute marijuana, in which both the prosecutor and the defense counsel acknowledged during a jury instruction conference that the defendant had admitted (by way of a confession) the offense charged in the indictment. Moreover, both counsel agreed with the court that the only issue left to be determined by the jury was whether the government had promised the defendant immunity from prosecution. The Fifth Circuit reversed the conviction, holding that the trial court's failure to instruct the jury as to all elements of the crime and its submission to the jury of only a single, unresolved, issue constituted "plain error" under Fed. R. Civ. P. 52(b) despite the fact that "defense counsel (had) participated and acquiesced in each of the challenged actions." 505 F.2d at 81
 
 
 [5]
 In Braley, the defendant did not deny that he committed the homicide charged, but instead insisted that at the time he was highly intoxicated or, alternatively, that he was legally insane. The Ninth Circuit, granting petitioner's request for a writ of habeas corpus, wrote:
 (T)he oversight in not furnishing the not guilty verdict form along with the opposite form constituted, in effect, a severely adverse comment by the trial judge, an impermissibly grave insinuation of judicial attitude toward the ultimate issue of guilt or innocence. Accordingly, we hold that the influence exerted by the trial judge, although unintended and probably resulting from a clerk's oversight, was so significantly irregular as to require a new trial.
 403 F.2d at 860.
 
 
 [6]
 In Edwards, notwithstanding that the defendant admitted a slaying, the Pennsylvania Supreme Court held that the trial court's failure to include a "not guilty" verdict form with the other five forms given to the jury deprived the accused of a fair trial. In rejecting the prosecution's argument that the defendant could not have been prejudiced by the judge's action due to the extreme unlikelihood of the jury acquitting an admitted slayer, the court wrote:
 (I)t still must be left to the jury to decide whether an admitted slayer had or did not have justification or excuse for what he did.... It is the trial and the trial alone which decides whether a defendant is assuredly guilty.... (N)o matter with what certainty the Judge views the culpability of the accused at the bar, the defendant is still entitled to all of the safeguards of a fair trial as announced in the Constitution, and the law of the land.
 
 
 [147]
 A.2d at 314-15
 
 
 [7]
 Compare, e.g., United States v. Strother, 578 F.2d 397, 403 (D.C. Cir. 1978) (oral admission by defendant); United States v. Terrack, 515 F.2d 558, 560 (9th Cir. 1975) (signed stipulation); United States v. Harper, 460 F.2d 705, 707 (5th Cir. 1972) (stipulation by defense counsel in open court). See also Wiley v. Sowders, 647 F.2d 642, 650 n. 8 (6th Cir. 1981) (defendant's consent to attorneys' confession of guilt "cannot be presumed from a silent trial record.")
 
 
 [8]
 Counsel's argument that Ross did not commit the crime might plausibly have been even more forcefully presented had the judge not already ruled that he would withhold from the jury the straight "not guilty" form
 
 
 [9]
 Abstract of Record, at p. 222
 
 
 [10]
 Id. at pp. 225-26
 
 
 [11]
 Id. at p. 226, see also id. at pp. 227-29
 
 
 [12]
 Id. at p. 241. In addition, the following excerpts from the record demonstrate that at several points counsel urged that the jury need not credit evidence tending to establish the petitioner's guilt: "if you ... believe the confession ...," id. at 226; "if you believe this evidence which is really just a confession ...," id. at p. 241; "if you believe ... that he stabbed a lady that was like a mother to him for no reason under the sun ...," id.; "if you believe that he beat her ...," id. (Emphasis added.)
 
 
 [13]
 Even the prosecutor recognized, during his summation, that the defense had not conceded Ross' commission of the crime:
 (Defense counsel) at the end of the case talks in a debating manner out of both sides of his mouth. At one point in the very beginning, he said the defendant did it but he was insane. When he argued to you before lunch, he did something different. He said the defendant didn't even do it.
 Abstract of Record, p. 249.
 
 
 [14]
 Abstract of Record, p. 15 (emphasis supplied)
 
 
 [15]
 See also id., at 410, 67 S.Ct. at 783 (suggesting that neither the absence of a reasonable-doubt instruction nor the failure to instruct the jury as to an essential element of the crime can ever be considered harmless error); United States v. Hayward, 420 F.2d 142, 145 (D.C. Cir. 1969) ("When the error which is challenged on appeal goes to a basic constitutional right, such as the right to trial by jury in issue here, the error will rarely be considered harmless.")
 
 
 [16]
 A rationale which is inconsistent with the majority's "jury nullification" argument