THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MELVIN SULLIVAN, Defendant-Appellant.

First District (3rd Division)    No. 80-671

Opinion filed April 8, 1981.—Rehearing denied May 14, 1981.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Joseph J. McNerney, III, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Melvin Sullivan, was charged with the murder of Michael Grayson. After a trial without a jury, he was found guilty of that crime and was sentenced to a term of 20 years. On appeal, defendant contends that the trial court improperly denied his motion for a continuance and his

post-trial motion for a new trial, and that he was not proved guilty beyond a reasonable doubt. In the alternative, defendant urges that failure of his court-appointed counsel to investigate witnesses favorable to the accused deprived him of adequate representation at trial.

Michael Grayson was shot and killed at 2:30 a.m. on March 18, 1979, in front of the Pepperbox Lounge in Chicago. The State's principal witness was Elnora Barnes, a prostitute.

Barnes testified that she knew and lived with defendant at a nearby hotel for about two weeks before the murder. On the night in question Barnes went to the Pepperbox because she was told defendant was looking for her and she knew he would be there. Defendant and deceased were in the rear of the lounge talking and then went to the bar together to order drinks. Near closing time, defendant, deceased, Barnes, a man named Cory, and a woman named Cynthia left the bar together. After first telling Barnes about a marijuana deal with deceased, defendant told her he planned to rob the deceased. Barnes had seen defendant with a gun that morning and had noticed in the lounge that he was carrying a gun. As Barnes began to cross the street, she heard a shot, turned, and saw deceased falling. Barnes saw defendant and Cory standing near deceased, and she ran. Defendant had red hair, a beard and was wearing a long, grey coat.

When defendant arrived at the hotel room about 30 minutes later, he responded to an inquiry by Barnes by stating he had "just killed a nigger" at the corner. Defendant and Barnes moved to another hotel, but about two weeks later she left the State because defendant was always "jumping on her and shooting up the money." Upon her return, the police contacted her.

Sam Titus, an employee of the Pepperbox, testified for the State that he saw defendant, whom he knew as "Red," in the lounge on the morning in question. Titus did not see defendant talk to anyone and did not know when he arrived or left.

Willie Davis testified for the State that he was at the Pepperbox on March 18. At 2:30 a.m. he went outside to get some air. Davis heard a shot and saw two women running. He also saw a person in a long, grey coat running from the scene, but could not say whether it was a man or a woman. Davis recalled seeing defendant in the lounge after midnight; he also had seen the deceased in the lounge earlier in the evening.

Defendant testified in his own behalf that he had been in the Pepperbox on March 17, 1979, but had departed by 11:45 p.m. He walked two blocks to his aunt's residence, where he was living, and she threw the door key down to him from an upstairs window. He let himself in and went to bed. He had known Barnes as a good friend, and they had registered in hotel rooms together. Their friendship ended on bad terms.

Defendant had seen Barnes in the morning on March 17, but he did not see her at the Pepperbox that evening.

Defendant's aunt testified that defendant arrived home on March 18 at 1 a.m. She threw the keys to him and he let himself in and went to bed. The doors were locked when she went to bed and they were locked when she arose. She distinctly remembered defendant's arrival the night before because the following morning he told her there had been a shooting the night before. When cross-examined about defendant having knowledge of the shooting at breakfast, she stated that defendant had awakened, had gone out for a short while for a newspaper or something, and had told her of the shooting when he returned.

After defendant presented his witnesses, defense counsel requested a continuance so that he could interview some of the witnesses listed by the State in its discovery response. When the trial court asked for an offer of proof as to what these witnesses would say, counsel stated that he lacked personal knowledge because he had not interviewed them. He stated that in light of what was contained in the police reports, however, their testimony would be contrary to the State's evidence. Defense counsel also stated that he did not know the availability of these witnesses because the State had difficulty in locating them. The court denied the motion for continuance and thereafter defendant was found guilty and sentenced.

Subsequently, defendant, represented by privately retained counsel, requested a new trial on the basis of newly discovered evidence. The new evidence purported to be the testimony of the five occurrence witnesses who had been listed in the State's response to discovery. Defendant was given leave to file an amended motion for a new trial with the affidavits of the five witnesses attached. At the hearing on the motion, the State argued that the proffered testimony was not newly discovered in light of the State's disclosure of the names of the witnesses to defendant prior to trial. The trial court denied the motion for a new trial.

■▌ We initially address, albeit briefly, defendant's contention that he was not proved guilty of murder beyond a reasonable doubt. We reject his contention that the testimony of a prostitute is *per se* incredible for purposes of the reasonable doubt test. (See *People v. Cosey* (1980), 82 Ill. App. 3d 968, 403 N.E.2d 656.) In this trial without a jury, the trial court observed the witnesses and believed the detailed and credible testimony of Elnora Barnes. We will not disturb the court's finding. *People v. Collins* (1978), 63 Ill. App. 3d 843, 380 N.E.2d 858.

■▌ Defendant also urges that the trial court's denial of his request for continuance constitutes reversible error. It is within the trial court's discretion to grant a continuance, and the court's decision will not be reversed absent an abuse of that discretion. (*People v. Polk* (1979), 70 Ill. App. 3d 903, 388 N.E.2d 864.) It is incumbent upon the party moving for

the continuance to present facts to the trial court showing that diligence to procure the witnesses has been exercised. (*People v. Polk*; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914.) Defense counsel clearly failed to make this requisite showing. He stated that he had not interviewed the witnesses nor was he able to make an offer of proof as to their testimony. He also told the court that he could not say whether the witnesses could be located. Presented with such a request for a continuance at the conclusion of trial, the trial court properly denied the motion for continuance.

■■ Defendant further contends that the trial court erred in denying his post-trial motion for a new trial. A request for a new trial on the basis of newly discovered evidence will not be granted unless the evidence is noncumulative and is of such a conclusive character that it will probably change the result; the evidence must not have been discoverable upon due diligence prior to trial. (*People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199.) Such motions are to be scrutinized carefully, are addressed to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. (*People v. Miller.*) In the present case, defendant had received the names and addresses of these witnesses prior to trial. Since the substance of their testimony could have been known in the exercise of due diligence, the trial court did not err in denying the post-trial motion.

Cases upon which defendant relies are clearly distinguishable from the present case. In *People v. Upshaw* (1965), 58 Ill. App. 2d 256, 207 N.E.2d 728, this court relaxed the diligence requirements where the sole issue was identity, and the absent witness was the only other person who could identify the offender other than the principal State witness. Moreover, the State had given an incorrect address of the absent witness to defendant prior to trial since the witness was incarcerated at that time. In *People v. Pirovolos* (1970), 126 Ill. App. 2d 361, 261 N.E.2d 701, the State disclosed only the first name of the occurrence witness to defendant prior to trial, and it did not furnish any address. Contrary to defendant's suggestion, the case does not stand for the proposition that due diligence is not required. In the present case, the trial court properly denied defendant's motion for a new trial.

■■ We now address defendant's contention that he was denied effective representation by his court-appointed counsel. He maintains that his counsel's incompetence is evidenced by his attorney's failure to interview occurrence witnesses to uncover evidence favorable to the accused. Failure to interview witnesses to uncover evidence favorable to the accused clearly constitutes actual incompetence. (*People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83.) Reversible error does not exist, however, unless defendant shows that he was substantially prejudiced by the incompetent acts of counsel. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3.) We hold that, under the facts and circumstances of the

present case, defendant was not substantially prejudiced by the absence of the affiants' testimony at trial.

Defendant's counsel attached five affidavits to his post-trial motion. Two affiants were walking with the deceased when the shooting occurred. Both stated to the police after the shooting that they did not get a good look at the offender. Hence the weight of their affidavits that defendant was not the offender would have been substantially reduced on cross-examination. Their affidavits also recited that deceased was not in the Pepperbox that night. We do not believe that such a collateral contradiction viewed against the testimony of all the State's witnesses would change the result of the trial in light of the overwhelming evidence against defendant.

The affidavit of Leroy, a/k/a "Candy" Johnson, a male prostitute, stated that he was standing at the corner when the shooting occurred. It also recited that Johnson told police he could identify the assailant if he saw him again and that he attended high school with the assailant. In connection with the motion for a new trial, a photo of defendant was shown to Johnson and he stated that defendant was not the assailant. The affidavits of June Brown and Arthur Malone contain similar assertions. Although such testimony at trial certainly would have been favorable to defendant, it would not dictate a different result. In this regard, we think it highly significant that this was a trial without a jury. The trial court heard the testimony of Elnora Barnes not only as to what she viewed at the shooting but also as to defendant's admissions made to her before and after the killing. The trial court also heard defendant's alibi. The judge observed the demeanor of the witnesses, weighed their credibility, and believed Barnes. Moreover, the same judge considered the affidavits and heard in argument the substance of the affiants' testimony. Defendant premised his post-trial motion on ineffective assistance of counsel as well as on newly discovered evidence. After considering affiants' assertions, the same judge adhered to his ruling and denied the post-trial motion. We believe it is clear that had the trial court heard the testimony of affiants, the outcome would have been the same. Defendant has not shown the requisite prejudice stemming from the absence of affiants' testimony. Thus, the conduct of defendant's appointed counsel did not give rise to reversible error in the present case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI, P. J., and McGILLICUDDY, J., concur.