UNITED STATES of America ex rel.
Warren Lee HARRIS, Petitioner,

v.

Marvin REED, Respondent.

No. 80 C 513.

United States District Court,
N.D. Illinois, E.D.

April 8, 1985.

Warren Lee Harris, pro se.

Jack Donatelli, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action is before the court on the petition for a writ of habeas corpus, 28 U.S.C. § 2254, of Warren Lee Harris. The parties have briefed respondent's motion for summary judgment. Moreover, the parties have provided the court with additional materials from the state court record. For the reasons stated below, respondent's motion for summary judgment is granted in part and denied in part. An evidentiary hearing is required to determine the merits of the one outstanding claim. The court therefore will appoint an attorney to aid Harris in this evidentiary hearing.

### Factual Discussion

On December 21, 1977, after a three-day jury trial, Harris was found guilty of murder on the testimony of the state's one occurrence witness, Antonio Slater. Ac-

cording to Slater, Harris shot and killed one Earnest Howard on the night of July 9, 1977, near the area of 16th and Christiana streets in Chicago, Illinois. On February 2, 1978, Harris was sentenced to serve 50 to 100 years in the state penitentiary.

At trial, Public Defenders Todd Musberger and Kathy Kuhlen represented Harris. In her opening statement on December 19, 1977, Kuhlen made the following remarks:

At this time, I would like to mention one of the names that Mr. Fuenty [prosecutor] brought up and also another name that he didn't mention that I think will figure quite prominently in this trial, that other name is Melvin McWhorter, also known as Buster on the street.

To understand the importance of Mr. McWhorter and of Antonio Slater, it is necessary to give you a brief review of the police investigation in this case. During the days immediately following the shooting of Earnest Howard the police talked to a number of people who were present in the area of 16th and Christiana, people who lived there and also to relatives of Earnest Howard. They learned that Earnest Howard was a narcotics dealer who sold in that neighborhood at 16th and Christiana.

\* \* \* \* \* \*

We believe the evidence will also show that the police learned that two persons immediately after the shooting were seen running away from the scene of the shooting in a northeast direction through a lot on the north side of Christiana. Through further investigation, the police learned that one of those individuals was Melvin McWhorter. They had Melvin McWhorter come to Area Four Police Headquarters, advised him of his rights and interrogated him.

At that time he denied knowing anything about the shooting. They then placed Mr. McWhorter in a lineup and two persons positively identified him as one of the individuals they had seen running away from the scene immediately after the shooting.

The police then confronted Mr. McWhorter again and Mr. McWhorter changes his story and says what he said before was a lie, and then tells the police that ... he was across the street at the time of the shooting but that he didn't see the shooting itself.

(Trial Transcript 31–33.) Kuhlen continued, discussing how Slater's statement to the police switched the focus of suspicion to Harris from McWhorter, and asking the jury to examine carefully Slater's credibility.

The state first called Howard's father to testify that he identified his son's body at the morgue. This was not objected to, although the identity of the victim was not in dispute. Harris does not claim error from this failure.

The state next called Maurice Williams, who knew the victim as "Pete." Williams came to Pete's aid soon after the shooting by calling the police. Williams testified that he noticed McWhorter (Buster) among the crowd of persons that had gathered around the scene of the shooting. (Tr. 46, 51.)

On December 20, 1977, the state examined Officer Joseph Michello, one of the police officers that appeared on the scene after the shooting. Musberger's cross-examination centered on the location of Howard's body upon his arrival on the scene.

The state next called Antonio Slater, who explained on direct examination that he arrived at the scene of the shooting while driving south on Christiana (a one-way southbound street) at about 20 m.p.h. Slater testified that he crossed the intersection of 15th and Christiana and when he was about 12 feet behind a parked vehicle that was blocking his way, he heard a shot and noticed two men standing near each other. He witnessed the man with his back to Slater push the other man, who fell. This occurred about 12 feet in front, or south, of the car that was parked in front of Slater's. The man who had pushed the other man down, turned and ran to the parked car, turned and faced Slater, pulled up a pistol at Slater, and jumped into the passenger

section of the car. (R. 71–76.) When the pistol was pointed at him, Slater crouched. (R. 79.) The car pulled away. (R. 76.)

When asked to identify the man who apparently shot Howard, Slater responded, "Wayne" and in court identified Harris as Wayne. (R. 77–78.) Slater testified that he knew Wayne from a poolroom at 13th and Kedzie. He testified:

> I don't actually know [Harris], I know him by people speaking to him, you know, but about two years I have seen him up there.... about once or twice a month.

(R. 78.) Slater was able to see Wayne because gold street lights along Christiana were lit and because his headlights were shining on Wayne's waist. (R. 81.)

Slater was next asked about going to the police station. He testified that he went there in August 1977 with his uncle and talked to Investigator Tom Shine. Slater testified that he had not been contacted before he went to the station. (R. 84.)

Musberger then cross-examined Slater. He first pointed out that it took Slater six weeks to go to the police with his story. (R. 89.) He highlighted that Slater had changed his reason for having been in the area of 15th and Christiana on that night. Musberger also highlighted inconsistencies between Slater's pretrial statements and his trial testimony. Musberger also impeached Slater's story that he had seen Wayne several times over the previous two years. (R. 109–110.)

After Slater, two other witnesses were called by the prosecution on the issue of the cause of death. On December 21, 1977, the defense rested without putting on any evidence. (R. 130.) The portions of the opening argument suggesting that McWhorter or others might have been responsible for the shooting were ignored completely. Later that afternoon, the jury returned a verdict that Harris was guilty of murder.

After sentencing, Harris was represented by an Assistant Appellate Defender, Nancy Abrahams, on direct appeal. Abrahams presented one argument on appeal, namely, that the evidence was insufficient constitutionally to support a conviction for murder. (Respondent's Attachment, filed 2/15/85, Brief for Appellant.) On June 4, 1979, the Appellate Court found the evidence constitutionally sufficient and affirmed the conviction. (*Id.* at Order Disposing of Appeal under Supreme Court Rule 23 [direct appeal]).

On July 17, 1979, Abrahams, as Harris's stand-by counsel, filed Harris's pro se petition for post-conviction relief. (Harris's Motion in Opposition, filed 11/21/83, at 8–9.) In the post-conviction petition, Harris raised two issues: (1) ineffective assistance of trial counsel, and (2) newly discovered evidence. The public defender's office was granted leave to withdraw, and Attorney Loretta Hall Hardiman assumed prosecution of the petition. She filed an amended post-conviction petition, dropping the newly discovered evidence claim.

The lower post-conviction court held a hearing on March 27, 1980. A second hearing on the amended petition occurred on March 19, 1981. (The transcript is attached as Exhibit 3 to Harris's Motion to Reconsider, filed 10/18/82.) The court denied the petition at the close of that hearing, without convening a hearing in which to take testimony. *Id.* at 27. Assistant Appellate Defender Bruce Mosbacher represented Harris on appeal of this decision. The denial of post-conviction relief was affirmed on February 22, 1983. (Respondent's Answer and Memorandum, filed 10/21/83, Order Disposing of Appeal Under Supreme Court Rule 23 [post-conviction].)

### Claims for Relief

Harris first claims that he was unduly prejudiced by the state court delay in disposing of his post-conviction petition. According to Harris, certain alibi witnesses (the Connor family) moved to Mississippi in late 1979 and Z. Mary Connor died in December 1979. (Original Petition, attachment, at 1–2.) This loss of evidence, caused by the alleged inexplicable delay, is offered as support for the claim that Har-

ris is now in custody in violation of the federal constitution.

Harris's second claim for relief is based on alleged ineffective assistance of counsel. According to Harris, his trial counsel failed properly to investigate witnesses and to impeach the testimony of Antonio Slater. Harris listed several errors in his amended petition for habeas corpus, all of which were raised in his amended petition for post-conviction relief:

1. Counsel failed to interview or call as witnesses Investigators B. Peck and L. Sykes to impeach Slater. These witnesses would testify that "the victim was shot in the gangway," although Slater testified the victim was shot on Christiana street. (Amended Petition for Habeas Corpus Item H.)

2. Counsel failed to interview or call as witnesses Alice Riles or Leroy Carter. Both saw two men running from the scene of the shooting at the time of the shooting. Both identified McWhorter as one of the two men. Riles indicated in the police report that she could identify the other man by appearance. Police records contained this information.

3. Counsel failed to investigate or call as a witness George Williams. Williams would testify that he was with McWhorter the night of the shooting, that he knew the victim through a long history of drug dealings, and that Harris was not at the scene of the shooting. Police records contained this information.

4. Counsel failed to call police investigator Shine or any other investigator to impeach Slater's testimony that he did not hang out in the area of the shooting and that he had never been in that area. Shine also could have impeached Slater's statement that he came to the police station voluntarily, although Shine's report indicates an informant provided Slater's name and the police contacted Slater. Counsel also did not seek the identity of the informant.

5. Counsel failed to offer into evidence the agreed stipulation that "would have perfected the impeachment of the witness Slater [sic] trial testimony that he turned off Christiana from 16th Street and witness [sic] the crime." (*Id.* at Item O.)

6. Counsel failed to call or investigate residents of 13th and Kedzie, who could testify that no pool room existed at that corner, thereby impeaching Slater's testimony that he knew Harris as Wayne from "seeing him every month at a poolroom on 13th and Kedzie." (*Id.* at Item Q.)

7. Counsel failed to interview, investigate, or call as witnesses four alibi witnesses: Jewel Connor, Z. Mary Connor, Genise Connor, and Charles Thomas. Harris provided counsel with the names and addresses of the witnesses. These witnesses would have testified that Harris was ill and in bed at the Connor's home on the night of July 9, 1977 and was later hospitalized on July 13, 1977 for that same illness. (See Affidavits attached to original petition for habeas corpus.)

8. Counsel failed to call any of the doctors who treated Harris at Cook County Hospital to testify and corroborate his alibi witnesses' story that he was hospitalized on July 13, 1977 with an illness that would indicate he was also ill on July 9, 1977.

All of the names contained in this list of alleged errors, except the names of the alibi witnesses, are contained in the police records and in the state's list of potential witnesses. (See Harris's Requested Records and Information, filed 2/25/85 [Answer to Discovery].) According to Harris's amended post-conviction petition, he did not learn that counsel would present no defense evidence until December 21, 1977, the last day of trial. (Harris's Motion to Reconsider, filed 10/18/82, Exhibit 1 at p. 3 [Amended Petition for Post-Conviction Relief].)

Harris's third contention is that his detention is unconstitutional because newly discovered evidence establishes his innocence. This evidence is an affidavit executed by Melvin McWhorter, who would

testify that Slater was not present at the scene of the shooting and that he witnessed George Williams shoot the victim. Harris notes that Riles, Carter, and Williams corroborate some of these facts, including that Williams and McWhorter were together that night and that McWhorter was seen leaving the scene of the shooting. (The court notes that, accepting as true Harris's counsel's opening statements, this would be McWhorter's third story. The first was that he knew nothing about the shooting; the second, that he was across the street from the shooting but saw nothing; and the third, that he saw Williams shoot Howard.)

Harris's final claim is that the evidence was constitutionally insufficient to convict him of murder beyond a reasonable doubt. He claims Slater's testimony was so inconsistent as to be incredible.

## Legal Discussion

### I. Post-Conviction Delay

Harris's first claim for relief stems from alleged prejudicial delay in the disposition of his Illinois petition for post-conviction relief. This claim was raised in Harris's original habeas corpus petition, which was received by the Clerk of the United States District Court on January 31, 1980 and filed on February 8, 1980. Harris had previously filed, on July 17, 1979, a petition for post-conviction relief. (Stand-by counsel Abrahams' affidavit evidences that she filed the petition on that date. *See* Abrahams Aff., attached to original petition for habeas corpus.)

Starting in early 1980, therefore, Harris had proceedings concerning the validity of his conviction pending simultaneously in both federal and state court. While District Judge Joel Flaum considered various issues regarding Harris's petition (basically mootness and exhaustion), Harris attempted to get his claims resolved in state court as well. The post-conviction petition was denied by the lower state court on March 21, 1981. On October 4, 1982, the federal district court dismissed Harris's petition for failure to exhaust available state remedies, because Harris at that time had

an appeal of the post-conviction decision pending in the Illinois Appellate Court. On April 4, 1983, Judge Flaum granted Harris's motion to reinstate his action and file an amended petition for habeas corpus, as exhaustion had been accomplished by that date.

Harris complains that his petition for post-conviction relief was "in limbo" for 7½ months before any action thereon was taken by the Illinois courts. Since one of his four alibi witnesses died in late December 1979 and all had moved to Mississippi by the end of 1979, Harris contends that the delay in processing his post-conviction petition was unconstitutionally prejudicial.

 To the extent that Harris's claim based on post-conviction delay sought relief from the exhaustion requirement in habeas cases, that claim is clearly moot. Inordinate delays in state procedures, such as post-trial motions, appeals, and post-conviction remedies, may excuse exhaustion in circuits where exhaustion is not considered a jurisdictional requirement. *See McGee v. Estelle*, 722 F.2d 1206, 1209–11 (5th Cir. 1984); *Baldwin v. Lewis*, 442 F.2d 29, 32–33 (7th Cir.1971). The remedy for inordinate delay is normally immediate consideration by the federal court of petitioner's federal claims, an effective waiver of the exhaustion requirement. *See Dixon v. State of Florida*, 388 F.2d 424, 426 (5th Cir.1968); *Rheuark v. Wade*, 540 F.2d 1282, 1283 (5th Cir.1976) (direct appeal); *cf. United States ex rel. Smith v. Twomey*, 486 F.2d 736, 738–39 (7th Cir.1973), *cert. denied*, 416 U.S. 994, 94 S.Ct. 2408, 40 L.Ed.2d 773, *reh'g denied*, 417 U.S. 959, 94 S.Ct. 3089, 41 L.Ed.2d 677 (1974). However, because Harris has exhausted his state appellate and post-conviction remedies, such a claim would now be moot.

Harris may also be arguing that the Illinois delay effectively deprived him of the right to present his constitutional claims in a federal forum, as evidence was lost during the delay. Harris is thus not attacking the adequacy of Illinois post-conviction procedures per se—an attack that would prob-

ably not rise to a constitutional violation, *see Williams v. State of Missouri,* 640 F.2d 140, 143–44 (8th Cir.), *cert. denied,* 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981)—but the effect of Illinois post-conviction procedures on the federal right of habeas corpus. At least one court has hinted that an inordinate delay, in that case twelve years, may violate petitioner's rights, even absent any trial error. *Codispoti v. Howard,* 589 F.2d 135, 142 (3d Cir. 1978).

■ Assuming that the Illinois delay in disposing of Harris's post-conviction petition was inordinate and could violate his right to a full and fair consideration of his federal habeas claims in federal court, however, Harris's claim appears to be without merit. The death of one of four alibi witnesses, Z. Mary Connor, alone is not prejudicial, since her testimony would be cumulative (all were in the same dwelling with Harris on the night of the shooting; three, including the deceased witness, executed affidavits to that fact). Moreover, while the witnesses now live out of state, Harris does not claim that they are inaccessible should their testimony be needed. On the present record, therefore, Harris has suffered no prejudice from the delay.

■ The court doubts that post-conviction delays, absent a showing of prejudice, alone could justify release of a petitioner for federal habeas corpus relief. Even if such a delay by itself could be reason for release, however, the delay in this case could not have violated Harris's federal due process rights. This delay appears to have been the result of misplacement of Harris's post-conviction petition. Moreover, cases examining delays in state procedures involve time periods far in excess of seven months. The 7½ month delay in this case is not so egregious that, absent prejudice, it could justify issuance of the writ for violation of Harris's federal due process rights.

Respondent's motion for summary judgment is granted as to Harris's claim of post-conviction delay.

## II. Ineffective Assistance of Counsel

### A. Waiver

As was discussed above, the one issue presented on direct appeal by Assistant Appellate Defender Nancy Abrahams was the lack of sufficient evidence on which to convict. The court's own examination of Harris's and the state's legal memoranda on direct appeal confirms this fact. Moreover, the Illinois Appellate Court's opinion on direct appeal addressed only the sufficiency of the evidence, and not the other issues raised by Harris in his petition for federal collateral review.

The original and amended post-conviction petitions raised the issue of ineffective assistance of trial counsel. The court is provided with the transcript of the March 19, 1981 lower court post-conviction hearing. The transcript reveals that Harris's attorney Hardiman and the state vigorously disputed the merits of the ineffective assistance of counsel claim. (Harris's Motion to Reconsider, filed 10/18/82, Exhibit 3 at pp. 6–27 [Transcript].) However, the parties also discussed the possibility that Harris waived his right to raise the issue through failure to preserve it on direct appeal. (*Id.* at 3–4, 7.) Moreover, the hearing court was aware of the waiver issue, as demonstrated by this comment:

> My question as a judge in this case is to determine whether or not, as a result of the trial that was had, the defendant had a fair trial, ... and if not, any matters that were improperly handled, those matters should have been raised on the basis of an appeal [sic].

(*Id.* at 26.) In any case, the hearing court also appeared to reach the merits of the ineffective assistance claim:

> On the basis of [the fact that the alibi witnesses were Harris's friends], I have considered all aspects, I have heard your arguments, I have heard the arguments of the state, and it is the opinion of the court that the defendant had been properly represented, that he had been given proper consideration on his appeal, both by the appellate court and the supreme court, and accordingly, this court is here-

by denying your petition, and it is hereby dismissed.

(*Id.* at 27.)

In affirming the denial of Harris's post-conviction petition, the Illinois Appellate Court noted that in Illinois, arguments raised in post-conviction proceedings but not preserved on appeal are barred by *res judicata* if the arguments are based on facts that are of record. *See People v. Edmonds,* 79 Ill.App.3d 33, 34 Ill.Dec. 555, 398 N.E.2d 230 (1st Dist.1979). The Court then pointed out that all facts, except those relating to the alibi witnesses, were reflected in the trial court record.

After making this point, the Court did not conclude that Harris had waived his ineffective assistance claims in full, but instead went on to consider the merits of those claims. The Court's manner of addressing the claims indicates that it considered the merits of the ineffective assistance arguments with respect to the alibi witnesses as well as with respect to of-record evidence:

> Competency is determined from the totality of counsels's conduct at trial. [Citation omitted.] In order to establish that he was deprived of his right to the effective assistance of counsel, defendant must demonstrate that his appointed counsel was actually incompetent, as reflected in the performance of his duties as a trial attorney....

> Defendant *also* contends that he was denied the effective assistance of counsel because his trial counsel failed to interview and present alibi witnesses and to present an alibi defense.

(Respondent's Answer and Memorandum, filed 10/21/83, "Order Disposing of Appeal Under Supreme Court Rule 23", at 5–6 [post-conviction].) ˙ (emphasis added.)

The Court continued to discuss the standards of effective assistance and to evaluate the quality of the assistance provided in Harris's case. For example, the Court noted trial counsel's vigorous cross-examination of Slater, which highlighted certain inconsistencies between his trial testimony and his pre-trial statements. The Court

also pointed out that trial counsel has great discretion in determining which, if any, witnesses to call in his or her client's defense. According to the Court, Harris's counsel could . reasonably and competently have chosen to rely on cross-examination of state witnesses and the state's failure to sustain its burden in prosecuting Harris. (*Id.* at 6.) The Court concluded that "the representation [Harris] received at trial [did not result] in substantial prejudice without which the outcome would probably have been different." (*Id.* at 7.)

█ It is clear that in Illinois, failure to raise on appeal the issue of ineffective assistance of trial counsel results in waiver of that issue for post-conviction review. *People v. Edmonds, supra; see* cases collected in *United States ex rel. Devine v. DeRobertis,* 754 F.2d 764, 766 n. 1 (7th Cir.1985). These authorities indicate that an exception to the waiver rule occurs when the basis for the claim is not found in the record.

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that a petitioner could not litigate collaterally in federal court an issue that state procedural law prevented from being presented to the state appellate courts. This ruling was extended by the Seventh Circuit in *United States ex rel. Spurlack v. Wolff,* 699 F.2d 354, 356 (7th Cir.1983), to a failure to present properly preserved trial objections on appeal.

█ Under *Sykes,* such a "waiver" of the right to present an issue to the federal courts on collateral review may be overcome only by a showing of "cause" and resulting "prejudice." Cause and prejudice are flexible concepts, satisfaction of which changes with the circumstances of a particular petitioner. *Clay v. Director, Juvenile Division, Department of Corrections,* 749 F.2d 427, 433–34 (7th Cir.1984). Moreover, under circumstances constituting a "miscarriage of justice," a *Sykes* waiver, not cured by satisfaction of the cause and prejudice test, may be ignored. *Id.*

█ Sometimes a state court will consider the merits of an issue that may not have

been properly preserved by timely objection or appeal. Where a state court ignores a procedural default and reviews the substantive merits of what would otherwise be a waived issue, federal courts must review the merits of that issue in a petition for habeas corpus. *United States ex rel. Williams v. Franzen*, 687 F.2d 944, 951, (7th Cir.1982). However, where a state court has clearly reached both the merits of the waiver question and the substantive merits of the improperly raised issue, the Seventh Circuit has found that absent a showing of cause and prejudice, *Sykes* bars federal collateral review. *Farmer v. Prast*, 721 F.2d 602, 605 & n. 5 (7th Cir. 1983); *United States ex rel. Veal v. DeRobertis*, 693 F.2d 642, 650 (7th Cir.1982); *see Jentges v. Milwaukee County Circuit Court*, 733 F.2d 1238, 1243 n. 1 (7th Cir. 1984).

In the present case, the Illinois Appellate Court made clear, and respondent agrees, that the issue of ineffective assistance of counsel was not waived as to facts not in record. According to the Appellate Court, those facts include the affidavits of the four alibi witnesses. This court notes additionally that the record appears to contain no indication (1) that Harris might have been confined to Cook County Hospital shortly after the shooting as a result of a serious illness, (2) that no poolroom existed at 13th and Kedzie, and (3) that McWhorter swore that George Williams committed the shooting. Respondent argues that to the extent that Harris's ineffective assistance of counsel claim depends on trial counsel's omissions indicated in the record, the claim was waived.

The court's review of the trial and appellate opinions on post-conviction review persuades it that the Illinois state courts ignored any waiver by Harris of his right to rely on "record" omissions. The question is whether Harris's case is more like that presented by *Williams* or by *Farmer*. If more like the former case, then federal collateral review is proper with respect to all omissions raised in the amended post-conviction petition also raised in the pending petition for habeas corpus.

In *Williams*, the Illinois Appellate Court "note[d] at the outset [that] the State is correct in its argument [that] the defense counsel waived [this issue] by failing to object to the trial court's [ruling]." *People v. Ross*, 63 Ill.App.3d 884, 20 Ill.Dec. 688, 692, 380 N.E.2d 897, 901 (1st Dist.1978). The Court followed this statement with citations to three Illinois Supreme Court cases supporting the state's waiver argument. *Id.* However, the Court never explicitly stated that the issue was waived. The Court then continued to reach the merits of the claim, finding that the improperly raised issue was substantively without merit. According to the Seventh Circuit in *Williams*, this treatment of what would otherwise be a waived claim allowed federal collateral review of that claim. *Williams*, 687 F.2d at 951.

In contrast, the *Farmer* Court, on appeal from denial of a post-conviction petition, explicitly found that the petitioner had waived his claim before examining the issue presented. *Farmer*, 721 F.2d at 605. Similarly, the Court in *Veal* distinguished an express ruling on procedural default from a mere discussion thereof for purposes of applying the *Sykes* bar to collateral review. *Veal*, 693 F.2d at 650. An express ruling on procedural default, presented as an independent and alternative ground for denying relief, prevents federal collateral review.

■ The treatment of Harris's claim is strikingly similar to that involved in *Ross*. In the February 22, 1983 denial of Harris's post-conviction appeal, the Court simply noted that waiver appeared to operate, but then continued to treat the merits of the improperly raised issue. Both the *Harris* and the *Ross* courts did not appear to make two rulings in the alternative, but rather to note a procedural default and then ignore it, reaching the merits instead. The court is therefore persuaded that Harris's ineffective assistance of counsel claim may be presented to the federal court with respect to all omissions raised in the amended post-conviction petition.

## B. Merits of Ineffective Assistance Claim

 The United States Supreme Court has recently issued two opinions concerning the scope of the sixth and fourteenth amendment right to effective assistance of counsel. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic,* —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The Court noted the universally accepted principle that the federal constitution guarantees "reasonable effective assistance." *Strickland,* 104 S.Ct. at 2062. A convicted defendant, to prevail on an ineffective assistance of counsel claim, must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 2065.

The *Strickland* Court stressed that "[c]ounsel ... has the duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process," *id.,* and that "counsel's function ... is to make the adversarial testing process work in the particular case," *id.* at 2066. Reasonable professional judgments must support counsel's actions. If counsel did not conduct a complete investigation of a particular matter, a reasonable professional basis for not conducting that investigation will defeat an ineffective assistance claim. *Id.* at 2066.

In addition to demonstrating an unreasonable professional error by counsel, a defendant must also show that the error had an effect on the judgment:

> The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Id.* at 2067. The court went on to describe the circumstances under which prejudice is presumed, *see id.* at 2607; *United States v. Cronic,* 104 S.Ct. at 2046–2047 & n. 25, and under which prejudice must be affirmatively shown by defendant, *Strickland,* 104 S.Ct. at 2067–68. Where defendant must demonstrate prejudice, as in this case, the test that must be satisfied is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." When a petitioner challenges his conviction, "the question is whether there is a reasonable probability that, absent the error, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 2069.

 Defendants challenging the constitutional sufficiency of their counsel must prove both parts of this test. Thus, the *Strickland* Court made clear that a finding that one part was not established obviates a decision regarding the other part. *Id.* A court may also review counsel's performance by addressing the prejudice component first, or vice versa. *Id.* When examining counsel's performance, "'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' that might be considered sound trial strategy." *Rogers v. Israel,* 746 F.2d 1288, 1294 (7th Cir.1984) (citing *Strickland,* 104 S.Ct. at 2065–66). *E.g., McKinney v. Israel,* 740 F.2d 491, 492 (7th Cir.1984) (court addressed only prejudice element and finding lack thereof, declined to reverse denial of writ); *Crisp v. Duckworth,* 743 F.2d 580 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985) (finding of incompetent counsel performance without resultant prejudice; court affirmed denial of writ).

 Regarding proper defense counsel preparation, the Seventh Circuit has explained:

> It is undisputed that a defense counsel "should make reasonable investigations into all defenses," *United States v. Zylstra,* 713 F.2d [1332] at 1338 [ (7th Cir. 1983) ], and that such investigations encompass the interviewing of witnesses. *United States v. Decoster,* 624 F.2d 196,

209 (D.C.Cir.1976) (en banc) (plurality opinion).

*Arrowood v. Clusen,* 732 F.2d 1364, 1370 (7th Cir.1984). In *Crisp v. Duckworth,* the Seventh Circuit examined extensively claims of ineffective assistance of counsel at the investigation and trial preparation stages, the stages implicated in the present petition. In that opinion, the Court stressed again the importance of pretrial investigation to reasonably competent representation:

Effective representation hinges on adequate investigation and pre-trial preparation. *See United States ex rel. Spencer v. Warden, Pontiac Correctional Center,* 545 F.2d 21, 24–25 (7th Cir.1976) (as corrected) (mere appearance of in-court effectiveness cannot compensate for inadequate pre-trial preparation).... Investigation may help an attorney develop or even discover a defense, locate witnesses, or unveil impeachment evidence. Though there may be unusual cases when an attorney can make a rational decision that investigation is unnecessary, as a general rule an attorney must investigate a case in order to provide minimally competent professional representation. [Citations omitted.]

\* \* \* \* \* \*

We do not agree that police statements can generally serve as an adequate substitute for a personal interview. *See United States v. Tucker,* 716 F.2d [756] at 583 & n. 17 [ (9th Cir.1983) ]; *United States v. DeCoster,* 487 F.2d [1197] at 1204 [ (D.C.Cir.1973) ] ("a defense attorney ... should interview not only his own witnesses but also those that the government intends to call").

743 F.2d at 583–584. It is true that a defense attorney's discretion is broad, and that so-called "trial strategy" may excuse omissions that otherwise would appear inexcusable. However, the Seventh Circuit clearly recognized in *Crisp* that

[t]hough there may be instances when the decision not to contact a potential defense witness is justified, [citation omitted], an attorney who fails even to

interview a readily available witness whose noncumulative testimony may potentially aid the defense should not be allowed automatically to defend his omission simply by raising the shield of "trial strategy and tactics," [citation omitted]; *see also Davis v. Alabama,* 596 F.2d [1214] at 1217 [ (5th Cir.1979) ] ("An attorney does not provide effective assistance of counsel if he fails to investigate sources of evidence which may be helpful to the defense."); *United States v. DeCoster,* 487 F.2d at 1201 (A court should not "second guess strategic and tactical choices made by trial counsel. However, when counsel's choices are uninformed ... a defendant is denied the effective assistance of counsel.")

743 F.2d at 584.

■ In this case, Harris claims that his counsel failed to interview and to call numerous witnesses. Some of the omissions could have led to impeachment, such as Slater's claim that he voluntarily appeared at the police department, that he did not hang around the crime scene area, and that there was a poolroom on Kedzie and 13th where he frequently saw Harris and knew him as "Wayne." In a case dependent solely on eye witness identification, where the identification is bolstered by the witness's prior knowledge of the defendant, this impeachment is important. Counsel's alleged failure to investigate certain witnesses could also amount to ineffective assistance of counsel. For example, Harris claims that his counsel did not interview Carter and Riles, who were present on the first day of trial. These two witnesses identified two men running from the scene of the crime. One of the men was McWhorter, according to both witnesses, and the other's identity is unclear. Riles told the police she could identify the other if shown his picture. Perhaps Riles and Carter could have identified Williams as the man running from the scene with McWhorter (Williams claims he was with McWhorter that night). This testimony could have been offered by the defense as an exculpatory version of the shooting. Fi-

nally, alibi witnesses, willing and available, were not called and the hospital records allegedly were not checked.

Taking Harris's allegations as true, his trial counsel's failure to conduct the above-described investigations would fall below the standard of reasonably competent representation. It is axiomatic that a defense counsel must interview witnesses to the crime and alibi witnesses. Trial counsel should also interview witnesses such as Riles and Carter, who did not witness the shooting but who observed areas near the crime scene at the time of the shooting. Finally, possible suspects, such as Williams, should be interviewed as possibly providing an alternative, exculpatory version of the events. (Such a version was alluded to by Kuhlen in Harris's opening statement.)

Respondent, the party moving for summary judgment, offers the October 14, 1983 affidavit of Todd Musberger as evidence of Musberger's competency. Musberger states that, "My best recollection is that Alice Riles and Leroy Carter were among the witnesses that could not be located. All police witnesses were interviewed before the trial and each cross examination was made with the most effective trial strategy in mind." (Respondent's Answer and Motion, filed 10/21/83, Musberger Affidavit.) However, the trial record indicates that Riles and Carter were in court on the day trial started, (Tr. 23), at least one because of Musberger's subpoena. This inconsistency, plus Musberger's failure to state explicitly whether he interviewed these two witnesses, prevent the court from determining on this motion that Musberger did investigate these witnesses and make an informed judgment regarding use of their testimony at trial.

Regarding the alibi witnesses, Musberger states:

> On two occasions that I presently recall, I interviewed Jewel Connor, Mary Connor and Genise Connor. I recall interviewing Thomas Charles on one occasion. It was my considered opinion that the jury would not find these people credible.

Therefore I decided as a matter of trial strategy not to call any of these people as witnesses at Mr. Harris's trial.

(*Id.*) Musberger does not indicate whether he checked the Cook County Hospital records in an attempt to corroborate this story.

In the affidavits of the alibi witnesses, Z. Mary Connor and Genise Connor state that they were available to testify and were not called, but do not mention whether Musberger interviewed them. Jewel Connor's affidavit indicates that she twice contacted Musberger in an attempt to explain her story to him. Musberger's affidavit is thus technically consistent with these alibi witness affidavits, although Musberger provides no reason for his conclusion that the witnesses were not credible.

Musberger states that he interviewed all police witnesses. As Harris does not claim that Musberger did not interview McWhorter, the court will assume that McWhorter was interviewed. Musberger does not expressly state that he interviewed Williams, who could have testified that Harris was not at the scene of the shooting.

Musberger does not respond to Harris's claims concerning impeachment evidence. While Musberger may not have been allowed to present extrinsic impeachment evidence, reasonably competent counsel should investigate possible avenues of impeachment. The evidence that Slater could not have known Harris through frequent contacts at a poolroom which allegedly did not exist is such an apparent avenue of impeachment.

■ This discussion reveals that one part of the ineffective assistance of counsel test—that pertaining to reasonably competent professional representation—cannot be decided on this motion. Musberger's affidavit is too general to answer all of Harris's claims. The court may deny a claim of ineffective assistance, however, if the prejudice component is not satisfied. Should Harris's allegations be true, however, he may have satisfied the prejudice

test. On this record and with Musberger's conclusory affidavit, the court cannot make a finding that the alibi witnesses were not credible. Moreover, impeachment of Slater additional to that accomplished at trial would cast further doubt on the reliability of the verdict. This is especially true regarding the nonexistence of a poolroom at 13th and Kedzie, which would impeach Slater's credibility as well as his identification. Finally, the alternative possible version of events, that Williams or McWhorter may have been responsible for the shooting, also casts further doubt on the verdict. Hence, both the competence of counsel's representation and the possible prejudice resulting therefrom should be examined in an evidentiary hearing. Such a hearing is appropriate when facts are in dispute and petitioner was not afforded a full and fair hearing on the ineffective assistance issue in the state system. *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963).

Respondent's motion for summary judgment as to ineffective assistance of counsel is denied. An evidentiary hearing on this claim will be set. Harris will be appointed counsel to aid him in this hearing. Rules Governing § 2254 Cases, 28 U.S.C. fol. § 2254, Rule 8(c).

### III. Newly Discovered Evidence

Harris's third claim is that his custody violates the federal constitution, as newly discovered evidence demonstrates he is innocent of the charged crime. In Harris's original post-conviction petition, which Abrahams states she filed on July 17, 1979, Harris requested a new trial based on newly discovered evidence and on ineffective assistance of counsel. Paragraphs 1 through 6 contain the allegations of newly discovered evidence, namely, the affidavit testimony of Melvin McWhorter. This affidavit reads in part:

> I was acquainted with Pete Earnest Howard befor [sic] he was killed and have on occasion, purchased narcotics from him.
>
> On July 9, 1977, at about 10:00 PM., I was present in the fifteen-hundred block

of South Christiana Avenue and consequently, witnessed the shooting of Mr. Howard. He was shot by George Williams, whom I have known for over twelve (12) years.

> I am also acquainted with Antonio Slater.... On July 9, 1977, Antonio Slater was not present in the fifteen-hundred block of South Christiana at 10:00 oclock [sic] pm. the night Pete Earnest Howard was killed.

(McWhorter Aff., dated June 29, 1979.) Harris alleges in his original post-conviction petition that this evidence was not and could not have been discovered by him or his counsel at an earlier date.

The amended post-conviction petition, however, omits the claim of newly discovered evidence. Rather, the entire claim rests on the allegation of ineffective assistance of counsel. No mention is made of the McWhorter affidavit, although it was incorporated as an exhibit to the amended petition. (Motion to Reconsider, filed 10/18/82, Exhibit 3 at pp. 1–6 [Transcript].) At the March 19, 1979 hearing, Harris's attorney Hardiman did not mention the McWhorter evidence.

As discussed above, the lower post-conviction court found that Harris had been provided effective assistance of counsel. It did not mention newly discovered evidence. On appeal of the postconviction petition, it is clear that ineffective assistance was also the only issue presented. (*See* Motion of Exceptions, filed 8/20/82, Exhibit [Brief and Argument for Petitioner-Appellant].) The Appellate Court clearly reached only the ineffective assistance argument. Although it noted the McWhorter affidavit on page 3, the Court failed to mention it again in the opinion.

■■■■ In Illinois, in order to obtain a new trial based on newly discovered evidence, a defendant must show that the evidence could not have been produced at trial by use of reasonable diligence, that the evidence is noncumulative, and that the evidence is of such a conclusive character that it would probably change the result. *People v. Sullivan*, 95 Ill.App.3d 571, 51

Ill.Dec. 60, 420 N.E.2d 474 (1st Dist.1981). Motions for new trial are subject to close scrutiny, *People v. Carpenter*, 74 Ill. App.3d 770, 30 Ill.Dec. 395, 393 N.E.2d 50 (1st Dist.1979), and have been frequently characterized as "disfavored," *e.g., People v. Wolf*, 48 Ill.App.3d 736, 6 Ill.Dec. 720, 363 N.E.2d 402 (2d Dist.1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1469, 55 L.Ed.2d 506 (1978); *cf. United States v. Feldman*, 756 F.2d 556, 560 (7th Cir.1983).

■ Newly discovered evidence must be presented to the trial court in a motion for new trial. Motions for new trial are governed by Ill.Rev.Stat. ch. 38, ¶ 116–1, which provides that they must be brought "within 30 days following the entry of a finding or the return of a verdict." *Id.* at ¶ 116–1(b). Exceptions to this 30-day requirement are narrow. *People v. Ferguson*, 102 Ill.App.3d 702, 57 Ill.Dec. 958, 429 N.E.2d 1321 (1st Dist.1981), *cert. denied*, 459 U.S. 872, 103 S.Ct. 159, 74 L.Ed.2d 133 (1982) (where sole prosecution witness recants or where prosecution prevented defendant from discovering evidence). Harris has not alleged compliance with these procedures. Moreover, Harris does not claim that these procedures themselves violate his federal due process rights. *Cf. Griswold v. Greer*, 712 F.2d 1200, 1205 (7th Cir.1983).

### A. Waiver

■ The court will assume that Harris filed a timely motion for new trial based on newly discovered evidence. However, unlike the ineffective assistance of counsel argument, the newly discovered evidence argument was not presented to nor considered by the reviewing Illinois courts. As described above, Harris omitted to make this claim before both the post-conviction and the direct appeal lower and appellate courts. Hence, this court is barred from considering the merits of the claim. *Wainwright v. Sykes, supra.* Harris has advanced no explanation for this procedural default.

### B. Merits of Newly Discovered Evidence Claim

■ Were the court to consider this issue, review would be narrow. In a federal habeas action, courts review the state proceedings for violations of federal constitutional rights. 28 U.S.C. § 2254(a). Hence, a federal court will not review the merits of a state court's denial of a new trial motion solely under the state standards for the granting of a new trial. *United States ex rel. Guillen v. DeRobertis*, 580 F.Supp. 1551, 1556 (N.D.Ill.1984).

■ The scope of federal habeas corpus review concerning newly discovered evidence is described in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In that case, the Court explained:

> Where newly discovered evidence is alleged in a habeas application, evidence which could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary hearing. Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.

*Id.* at 317, 83 S.Ct. at 759. This reason has led courts to the principle that a denial of a motion for new trial based on newly discovered evidence may be reviewed only for the presence of an error of constitutional magnitude. *Subilosky v. Callahan*, 689 F.2d 7, 9 (1st Cir.1982), *cert. denied*, 460 U.S. 1090, 103 S.Ct. 1788, 76 L.Ed.2d 356 (1983); *Guillen*, 580 F.Supp. at 1556. The Fifth Circuit has explained this test as follows:

> Questions of guilt or innocence are not matters to be considered upon petition for habeas corpus. ... Newly discovered evidence in the form of a confession by another does not render the conviction void and subject to collateral attack by habeas corpus because it goes to the merits of the conviction, not to its legality ... [T]he confession 'might be urged as a proper subject for executive clemen-

cy, but it affords no basis for judicial action.'

*Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir.1977) (citing *Shave v. Ellis,* 255 F.2d 509, 511 (5th Cir.1958)). This discussion is consistent with the Supreme Court's analysis that a petitioner in Harris's position have some "justifiable reason" for failing to present the newly discovered evidence to the trial court. *Townsend v. Sain,* 372 U.S. at 317, 83 S.Ct. at 759.

■ Even assuming, however, that this court should apply the standards the Illinois courts would apply to a newly discovered evidence claim, Harris has not satisfied those standards. First, it is clear that McWhorter was known to Harris and his counsel at least at the time of the state's disclosure of certain police reports in pretrial discovery. Harris does not explain why he or his counsel could not obtain McWhorter's statement before trial. Moreover, Harris does not claim that his counsel was ineffective with respect to investigation of McWhorter. Hence, Harris has not offered a "justifiable reason" for not presenting this evidence at trial. Second, the lack of credibility of the McWhorter testimony would also justify a finding by the Illinois courts that the evidence was not of such a conclusive character as to make it probable that the result would be different. On two occasions before the execution of the affidavit, McWhorter had stated that he did not see the shooting. His third story was thus subject to damaging impeachment. Harris's failure to satisfy this standard, which is at least as demanding as any federal constitutional standard would be, provides a second, alternative, reason to grant respondent's motion for summary judgment as to the newly discovered evidence claim.

## IV. Sufficiency of the Evidence

Harris's final claim is that the evidence presented by the state was constitutionally inadequate to support his conviction. The Illinois Appellate Court examined the record on the question of sufficiency and affirmed Harris's conviction. A question is

raised as to the test to be applied in determining the sufficiency of the evidence in a § 2254 case.

■ The Seventh Circuit clearly applies the so-called "reasonable doubt" test in determining whether federal convictions are supported by constitutionally sufficient evidence. *United States v. Moya,* 721 F.2d 606, 609–10 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984); *United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1012 (7th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985). The "reasonable doubt" test is satisfied when a reviewing court finds that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Foster,* 741 F.2d at 1012. In applying this test, the reviewing court must "assume that the jury drew all reasonable inferences in the prosecution's favor...." *Id. See also United States v. Herrera,* 757 F.2d 144, 149–150 (7th Cir.1985).

The Seventh Circuit has applied this test in reviewing state court convictions as well. *See Foster, supra; Rowan v. Owens,* 752 F.2d 1186, 1187 (7th Cir.1984). There is some question as to whether this test would apply to an Illinois conviction based only on circumstantial evidence, *see Foster,* 741 F.2d at 1012–13, but the present case does not require resolution of this issue.

■ The court has carefully reviewed the trial transcript in this case. The review centers on what was presented at trial, not what could or should have been raised therein. The present record therefore supports Harris's conviction with sufficient evidence. The jury was presented with the occurrence testimony of Antonio Slater. As discussed above, Slater testified that he witnessed the shooting, and that Harris, whom he knew as "Wayne," was the perpetrator. Slater further testified that he had at least a few seconds to view the perpetrator's face, which was illuminated both by street lights and by Slater's headlights. Additionally, Slater's identification was en-

hanced by his prior knowledge of Harris. Harris's cross-examination of Slater, while lengthy, delved into minor inconsistencies in Slater's story. This cross-examination affected the weight of Slater's testimony, but cannot be characterized as destroying his credibility or the consistency between his pre-trial and in-court stories.

The jury could reasonably believe Slater's testimony and his ability to identify the perpetrator. A rational jury thus could have found the elements of the offense of murder beyond a reasonable doubt. Whether that would have been the finding if Harris's counsel had taken the course of defense recommended by Harris is not relevant to the present inquiry concerning sufficiency of the evidence. Respondent's motion for summary judgment on this ground is therefore granted.

### Conclusion

Respondent's motion for summary judgment is granted except as to the ineffective assistance of counsel claim. An evidentiary hearing shall be held on the remaining claim. The court will appoint an attorney for Harris under Rule 8(c), 28 U.S.C. fol. § 2254.

It is so ordered.